## MINE SAFETY APPLIANCES CO. *v.* FORRESTAL.

No. 71.   Argued November 9, 13, 1945.—Decided December 10, 1945.

*Mr. W. Denning Stewart,* with whom *Messrs. Mahlon E. Lewis* and *Charles Effinger Smoot* were on the brief, for appellant.

*Mr. David L. Kreeger, pro hac vice,* with whom *Solicitor General McGrath, Messrs. A. Morris Kobrick* and *Jerome H. Simonds* were on the brief, for appellee.

MR. JUSTICE BLACK delivered the opinion of the Court.

After an investigation in which appellant appeared, appellee James V. Forrestal, while Under Secretary of the Navy, determined that the appellant had received a large

amount of excessive profits on government war contracts within the meaning of the Renegotiation Act.[1]  Pursuant to the powers given him by that Act the appellee notified appellant that unless appellant took action to eliminate these profits the Under Secretary would direct government disbursing officers to withhold payments due appellant on other contracts, sufficient in amount to offset the government's loss due to the excessive profits.[2]  Section 403 (e) of the Renegotiation Act provides that any contractor aggrieved by the Secretary's determination may within ninety days apply to the Tax Court for a de novo trial and adjudication of the issue.  The section provides that the Tax Court "shall have exclusive jurisdiction . . . to finally determine the amount . . . and such determination shall not be reviewed or redetermined by any court or agency."  58 Stat. 86.  The appellant, without following the procedure provided for in § 403 (e), filed this complaint in the District Court.  The complaint seeks an injunction and declaratory judgment.  It alleges, among other things, that the Act is unconstitutional on many grounds; that withholding payment of the sums found to represent excessive profits would seriously interfere with appellant's operations and with production of critical materials for the government; that, due to statutes and executive orders which make many of the appellant's contracts confidential and secret, it will be impossible for it to carry on proceedings to enforce its contract rights until these restrictions are lifted; and that it is without

---

[1] 56 Stat. 226, 245; 56 Stat. 798, 982; 57 Stat. 347; 57 Stat. 564; 58 Stat. 21, 78.

[2] Section 403 (c) (2) of the Renegotiation Act authorizes and directs the Secretary to eliminate excessive profits by, among other things, "withholding from amounts otherwise due to the contractor any amount of such excessive profits."

a plain, adequate and complete remedy at law.[3]  The District Court composed of three judges dismissed the complaint as a suit against the United States to which the sovereign had not consented, 59 F. Supp. 733, and the case comes before us on direct appeal.  28 U. S. C. § 380a. Here government counsel, appearing for the Secretary, advance the District Court's grounds and contend further that the judgment below be affirmed because appellant failed to exhaust its administrative remedy and to follow the statutory procedure in not first going before the Tax Court to which Congress has granted "exclusive" jurisdiction, and because it does not appear that appellant is without an adequate legal remedy.

We think the government is an indispensable party in this case, and since it has not consented to be sued in the District Court in this type of proceeding, the complaint was properly dismissed against the government officer. *Minnesota* v. *United States,* 305 U. S. 382; *Stanley* v. *Schwalby,* 162 U. S. 255.  Appellant contends that the action seeks to prevent a tort by the Secretary, acting as an individual and not as an officer of the government, consisting of a trespass against appellant's property, and that equitable relief is necessary because appellant has no adequate remedy at law and since it would otherwise suffer irreparable loss.  Under our former decisions, had the factual allegations supported these contentions, the com-

---

[3] Appellant also alleged below that the Secretary had threatened to instruct other contractors to withhold any moneys due to appellant. A stipulation and affidavit by the parties reveal, however, that this action will in fact not be taken.  Any controversy that might have been before the court by virtue of this allegation has, thus, become moot.  It can therefore not serve as the basis for the court's consideration of the constitutional and other questions here in issue.  *United States* v. *Alaska Steamship Co.,* 253 U. S. 113; *Commercial Cable Co.* v. *Burleson,* 250 U. S. 360; *Montgomery Ward & Co.* v. *United States,* 326 U. S. 690.  Cf. *Coffman* v. *Breeze Corporations,* 323 U. S. 316.

plaint as filed would, in the absence of any further proceedings, have provided a basis for the equitable relief sought. See e. g., *Philadelphia Company* v. *Stimson,* 223 U. S. 605, 619–620. For according to these cases, if we assume, as we must for the purpose of disposing of the jurisdictional issue, that appellant's allegations including the one that the Renegotiation Act is unconstitutional are true, the fact that the Secretary had acted pursuant to the command of that statute would have made no difference. These cases hold that a public officer can not justify a trespass against a person's property by invoking the command of an unconstitutional statute. Under such circumstances, the tort becomes the officer's individual responsibility, and the government is not held to have sufficient interest in the controversy to be considered an indispensable party. But the government does not lack such interest in all cases where the suit is nominally against the officer as an individual. The government's interest must be determined in each case "by the essential nature and effect of the proceeding, as it appears from the entire record." *Ex parte New York,* 256 U. S. 490, 500.

Here, the essential allegations and the relief sought do not make out a threatened trespass against any property in the possession of or belonging to the appellant. Nor does the record present any other circumstances that would make the Secretary suable as an individual in this proceeding. Certainly the action which the Secretary proposed to take is not a violation of any express command of Congress. Cf. *Rolston* v. *Missouri Fund Comm'rs,* 120 U. S. 390, 411; *Houston* v. *Ormes,* 252 U. S. 469; *Smith* v. *Jackson,* 246 U. S. 388. The sole purpose of this proceeding is to prevent the Secretary from taking certain action which would stop payment by the government of money lawfully in the United States Treasury to satisfy the government's and not the Secretary's debt to the appellant. The assumption underlying this action

is that if the relief prayed for is granted, the government will pay and thus relinquish ownership and possession of the money. In effect, therefore, this is an indirect effort to collect a debt allegedly owed by the government in a proceeding to which the government has not consented. The underlying basis for the relief asked is the alleged unconstitutionality of the Renegotiation Act [4] and the sole purpose of the proceeding is to fix the government's and not the Secretary's liability. Thus, though appellant denies it, the conclusion is inescapable that the suit is essentially one designed to reach money which the government owns. Under these circumstances the government is an indispensable party, *Minnesota* v. *United States,* 305 U. S. 382, 388, even though the Renegotiation Act under which the Secretary proposed to act might be held unconstitutional. *Louisiana* v. *Jumel,* 107 U. S. 711; *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 446; *Hagood* v. *Southern,* 117 U. S. 52, 67, 68; *In re Ayers,* 123 U. S. 443, 496, 497, 505–507; *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 9; *Wells* v. *Roper,* 246 U. S. 335, 337; see also *N. Y. Guaranty & Indemnity Co.* v. *Steel,* 134 U. S. 230. In short the government's liability can not be tried "behind its back." *Louisiana* v. *Garfield,* 211 U. S. 70, 78.

*Affirmed.*

MR. JUSTICE REED concurs in the result for the reason that he thinks no adequate ground is alleged for an injunction. In his view a legal remedy exists in the Court of Claims since objection to the amount of excess profits is waived and the stipulation, referred to in the opinion, removes multiplicity of actions for relief as a possible ground.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[4] This is seen from the prayer for a declaratory judgment, which asks only that the Renegotiation Act be held unconstitutional.