## PHILLIPS PETROLEUM CO. v. JOHNSON.
### Civ. No. 1630–47.

District Court of the United States for the District of Columbia.

May 22, 1947.

H. D. Driscoll and H. Russell Bishop, both of Washington, D. C. (John H. Mac-Vey, and Stephen J. McMahon, Jr., both of Washington, D. C., of counsel), for plaintiff.

John F. Sonnett, Asst. Atty. Gen., George Morris Fay, U. S. Atty., and Daniel B. Maher, Asst. U. S. Atty., both of Washington, D. C. (John Ford Baecher and J. Francis Hayden, Sp. Assts. to the Atty. Gen., of counsel), for defendant.

McGUIRE, Associate Justice.

This is a complaint for Declaratory Judgment and Injunctive Relief, whereby the plaintiff seeks to enjoin the Director of the Office of Defense Transportation from putting into effect a so-called Special Allocation Order, and to have the same declared illegal, void and ineffective, and for a ruling to the effect that the plaintiff is not obliged to comply with an instruction sent to it by the Office of Defense Transportation implementing the order above mentioned.

The facts leading up to the question, in brief, are as follows:

The Government was and is the owner of certain tank cars of which a number were leased to the plaintiff under the terms of an instrument dated March 23, 1944 and approved by the proper government contracting officer on May 28, 1944, and which was to remain in effect, by its terms, until March 23, 1945. There was a provision that upon completion of the term specified, the lease was to continue on a month-to-month basis unless sooner terminated by either party on the giving of what was in effect a 30-day notice. (Plaintiff's Ex. A.). The actual number of cars leased, under the terms of the instrument referred to, was originally 70. They were of a specified character, series and capacity. Other cars in the same category were subsequently leased under the same terms, until the aggregate held by the plaintiff under the arrangement was 189.

792

Subsequently these cars, among others, were declared by the Government to be surplus and were turned over to the War Assets Administration for ultimate disposition. That agency apparently proceeded to cancel, under the terms of the lease, but agreed, it appears, subsequently to continue the lease in full force and effect, reducing, however, the cancellation-notice-period to 10 days. This arrangement was brought about by telephone and telegraphic communications, (Plaintiff's Exs. B. and C),—with the War Assets Administration as the new contracting agency for the Government and the plaintiff concurring.

On April 8, 1947 the Administration, by telegram gave the 10 days' notice required and terminated the agreement covering all cars leased to the plaintiff. In the telegram of termination the Administration indicated it was taking its action "pursuant to an Order of the Office of Defense Transportation".

This Order, known as Special Allocation Order ODT R-2 (Plaintiff's Ex. E) was issued by that Office on March 31, 1947 and allocated 24 cars only to the plaintiff, and presumed to allocate the remainder of all surplus cars, including those still in possession of the plaintiff, to other operators competing with the plaintiff in the same field. Covering telegrams were sent to the plaintiff (Plaintiff's Exs. F, G, H, I, J, K, L, M, and N) advising it of the fact of reallocation with particular directions giving effect to the same, on the date, however, it is to be noted, when the 10 day notice required its lease agreements would expire.

The plaintiff claims this is a violation of the terms of its leases and further counters that the Order is illegal and void since the First Decontrol Act of 1947, Public Law 29, 80th Cong., 50 U.S.C.A.Appendix, §§ 633 note, 645, permits allocation of transportation equipment only to rail carriers. (Plaintiff's Ex. D).

■ There is neither merit nor substance in the plaintiff's contention. All it was entitled to under its agreement with the government was 10 days' notice of termination, which it received. What the motive was that influenced the government to take the step it did, or whether or not the War Assets Administration acted as a result of a misconception of his powers by the Director of Defense Transportation is no more material than that the government would have the right to inquire into any motive or reason that might have activated the plaintiff if it had decided to terminate. Either side could have ended the relationship by the notice agreed upon and the plaintiff knew this when it entered into the contract.

■ The fact that the government is allocating some,—indeed the great bulk of the transportation equipment formerly leased to the plaintiff,—to its competitors does not affect its right, once it has complied with the terms as to termination, to dispose of its property as it sees fit and the plaintiff, having no legal or equitable right to continue to withhold possession, has no standing to challenge such disposition. It has no capacity to sue and if it be assumed, arguendo, that it had, the suit, in effect, would be one against the sovereign. See Mine Safety Appliance Co. v. Forrestal, D.C., 59 F.Supp. 733, affirmed 326 U.S. 371, 374, 66 S.Ct. 219, 90 L.Ed. 140.

■ Of course, the plaintiff has certain rights under paragraph 2 of the original agreement with reference to the return of the cars "* * * to the government at the said point or points or other point or points mutually agreed upon * * *" and it is assumed that a decent regard will be had by the government for that part of its contractual obligation, but even if there were a breach, it confers no right on the plaintiff to proceed against the government in this Court,—the proper tribunal being the Court of Claims.