992

## UNITED STATES v. GEISLER.
### No. 9783.

United States Court of Appeals
Seventh Circuit.

June 9, 1949.

Rehearing Denied July 9, 1949.

A. F. W. Siebel, Arthur F. Siebel, Chicago, Illinois, for appellant.

Otto Kerner, Jr., U. S. Atty., Chicago, Illinois, John P. Lulinski, Asst. U. S. Atty., Chicago, Illinois, C. Wylie Allen, Asst. U. S. Atty., Chicago, Illinois, Dewey G. Hutchinson, United States Naturalization Examiner, Dept. of Justice, Immigration and Naturalization Service, Chicago, Illinois, for appellee.

Before MAJOR, Chief Judge, and MINTON and DUFFY, Circuit Judges.

MINTON, Circuit Judge.

This is an appeal from a judgment restoring a judgment denaturalizing the defendant-appellant which had heretofore been vacated upon a petition for rehearing. The defendant was admitted to citizenship in the United States on September 19, 1940. He formerly had been a German citizen.

On September 4, 1942, while he was confined in the guardhouse at Fort Sheridan, Illinois, after his conviction by a court martial for violation of the 96th Article of War, 10 U.S.C.A. § 1568, while a private in the Army, a complaint based upon the same facts relied upon in the court martial was filed in the District Court for the Northern District of Illinois to cancel the certificate of naturalization issued to the defendant on September 19, 1940, because of fraud and bad faith of the defendant in obtaining the certificate. The pertinent paragraphs of that complaint are set forth in the margin.[1]

---

1 "6. That all of the representations aforesaid made by the said Hans Geisler in his petition for naturalization were false and fraudulent in that he was not in fact attached to the principles of the Constitution of the United States at the time of the filing thereof nor during the five years prior thereto; in that he did not in good faith intend to renounce absolutely and forever all allegiance and fidelity to the German Reich of which he was then a subject but in fact intend-

On November 24, 1942, the defendant in that proceeding filed his answer to the complaint, consisting of three short paragraphs which are set forth in the margin.[2] Upon this complaint and answer, the defendant's statements made in open court that he did not desire to be represented by counsel and that he admitted the truth of the allegations contained in the complaint, and on testimony of witnesses in support of the complaint, the District Court found that the certificate of naturalization was fraudulently obtained and the defendant's oath of allegiance was false in that he never intended to forswear his allegiance to the German Reich and to pledge his allegiance to the United States. The District Court cancelled the certificate.

Nothing more was heard from the defendant until March 27, 1946, over three years after the final decree cancelling his citizenship and almost a year after hostilities with Germany had ceased, when he appeared by counsel and filed a petition for rehearing in the old proceeding wherein his naturalization had been cancelled as fraudulent. In this petition he alleged that the statements on which he was convicted in the court martial and which formed the basis for cancelling his citizenship were involuntary and made without the benefit of counsel;[3] that the answer he filed was induced by circumstances of his confinement, without stating what those circumstances were, and by statements made and advice given him by certain Army officers and representatives of the United States Attorney's office in Chicago. He then alleged that the statements made in his petition for naturalization were not false or fraudulent nor was his oath of allegiance; that the petition was filed and presented and the oath taken in good faith; that the proceedings were a denial of due process of law to him; that he does not allege that the officers of the United States Army or the representatives of the office of the United States Attorney in Chicago intentionally or fraudulently misinformed him to his disadvantage, intending to deprive him of due process of law and of his citizenship in the United States, but that the entire circumstances of the trial and his court martial so beclouded the defendant's rights that the result was a deprivation of due process of law; that he was advised by all with whom

---

ed to retain allegiance and fidelity to the said German Reich; and in that he did not in fact intend to reside permanently in the United States.

"7. That all of the representations aforesaid made by the said Hans Geisler in his oath of allegiance were likewise false and fraudulent in that he did not in fact intend to support the Constitution and laws of the United States of America against all enemies, foreign and domestic; and in that he did not in fact intend to bear true faith and allegiance to the same, but in fact did intend to remain a subject of the German Reich and to maintain his allegiance thereto.

"8. That the said certificate of naturalization was procured by the said Hans Geisler fraudulently and illegally and for the purpose of obtaining the rights, privileges and protection of American citizenship without intending to assume the duties thereof, and that said certificate of naturalization is subject to cancellation."

2 "Hans Geisler, defendant, for answer unto the complaint filed in the above entitled cause by the United States of America says:

"1. That he is presently confined in the Guard House at Fort Sheridan, Illinois, serving a sentence of five years imprisonment imposed upon him by a duly constituted Board of Court Martial of the Army of the United States and that he is not represented by counsel and does not desire to be represented by counsel in this proceeding.

"2. Defendant further says that he admits all of the allegations in the said complaint contained and further admits that at the time he took the oath of allegiance and obtained his citizenship in the United States of America by naturalization, he did not intend to renounce absolutely and forever all allegiance and fidelity to The German Reich and that he was not then in fact attached to the principles of the Constitution of the United States.

"3. Defendant hereby consents to an immediate hearing of this cause and to the entry of an order by this Court revoking and setting aside the decree of naturalization whereby he obtained citizenship in the United States as prayed in the said complaint."

3 The voluntary nature of his statements was litigated in the court martial, in which trial he had civilian counsel.

he spoke that he had no chance to retain his citizenship; that people in his situation would automatically be denaturalized; that Germans at that time had no chance to enforce their rights in court; and that, relying upon these representations to his disadvantage, he filed the answer which he filed in the proceeding to cancel his citizenship. He then alleged that he had since been informed and now believed that he had a good defense and answer on the merits of the complaint and that he was desirous of having the cause tried on its merits and having his day in court, that he had a full, complete and true answer in defense to the complaint, and that he reaffirmed the allegations in his petition for naturalization and his oath of allegiance. He prayed that the order of November 24, 1942, be set aside and held for naught, that a new trial of the issues contained be granted, and that he have such other relief as might seem just and equitable.

To this petition the United States directed a motion to dismiss, for the reasons that the petition did not state grounds upon which relief could be granted; that the court lost jurisdiction of the cause by expiration of the term of rendition, and further by the expiration of the six-month period provided for in Rule 60(b) of the Federal Rules of Civil Procedure;[4] that the present petition is in effect a bill for review and the United States has not consented to become a party; that the errors alleged in the petition were within the knowledge of the defendant within six months after the entry of the judgment; that if the petition is construed as a motion for a new trial, it was too late because not filed within ten days of the rendition of judgment as required by Rule 59(b) of the Federal Rules of Civil Procedure; that if the petition is construed as a motion for a new trial based on newly discovered evidence, it was not filed before the expiration of the time for appeal from the final judgment, as required by Rule 59(b); and that if the petition is construed as a bill of review, it fails to state the usual grounds therefor, namely, (a) error of law apparent on the face of the record, and (b) newly discovered evidence.

The court overruled this motion to dismiss and without hearing any evidence vacated the decree of November 24, 1942, and reinstated the defendant's citizenship. This order was entered November 7, 1946.

The District Court having vacated the decree of November 24, 1942, without hearing any evidence but solely upon the petition of the defendant, proceeded on April 21, 1947, to hear again the issues tendered by the complaint filed by the United States September 4, 1942, for the cancellation of the defendant's citizenship. The answer filed by the defendant on November 24, 1942, was not withdrawn. The complaint then stood confessed, but the confession contained in the defendant's answer was sought to be avoided by proving the allegations of the petition for rehearing. On this state of the record, the cause went to hearing, the defendant voluntarily appearing in person and by counsel.

The facts adduced at this hearing are as follows. The defendant was placed upon the stand by the Government and testified that on January 27, 1942, he signed the affidavit taken down before Lieut. De Love, Post Intelligence Officer at Fort Sheridan, and sworn to before Capt. Ure, the Post Adjutant. The pertinent parts of this affidavit read as follows:

"Affiant further states that he feels and believes that Germany is justified in its present struggle and is only fighting for its daily bread.

"Affiant further states that he hopes that Germany will win over England.

"Affiant further states that he has consistently expressed and does have admiration for Hitler and his Nazi Regime.

"Affiant further states that he believes that the United States has no business in this war and it is nothing but a capitalist war to make a few people rich.

"Affiant further states that he has attended Bund Meetings at 3857 Western Ave., Chicago, Illinois, on the average of once a month for 3 years.

---

4 28 U.S.C.A. All references to the Federal Rules of Civil Procedure hereinafter are cited to the same source.

"Affiant further states that he hereby refuses to fight or to bear arms for the United States against Germany.

"Affiant further states that he hereby refuses to fight or to bear arms against Japan, because to bear arms and to fight against Japan is to fight and bear arms against Germany who is supposed to be America's chief enemy.

"Affiant further states that if necessary I am ready to renounce my citizenship papers, rather than to fight against Germany or Japan.

"Affiant further states that at the present time he does not intend to fulfill his oath of allegiance to the United States against her enemies Germany, Italy or Japan.

"Affiant further states that he does not now belong nor did he ever belong to any club or association except the National German Alliance.

"Affiant further states that he has read above and same is true and that he makes this affidavit as his free and voluntary act, that he has been warned of his rights, and that this may be used against him.

"Further affiant sayeth not.

"Hans Geisler"

The defendant testified that he took an oath of allegiance when he became a citizen of the United States. He admitted to the statements in the affidavit that Germany was fighting for its daily bread and that he hoped Germany would win over England. He could not remember if he had said it was a capitalistic war to make a few people rich. He denied that he stated he refused to fight against Germany or Japan. He was then asked:

"Q. Did you also say, if necessary you were ready to renounce your citizenship papers rather than to fight against Germany?" A. Well, that needs a little explanation to clarify that.

"By the Court: You did say that? A. I said that."

He was not asked either when called by the Government, when a witness in his own behalf, or on cross-examination to clarify that statement, and he did not clarify it. He denied that he did not intend to fulfill his oath of allegiance to the United States against Japan, Italy, and Germany. He admitted that he had stated that he had attended Bund meetings and had been a member of the National German Alliance.

Lieut. De Love testified that he was a lawyer, and had been Post Intelligence Officer at Fort Sheridan in January, 1942; that he was acquainted with the defendant and first called him to his office on January 24 or 25, 1942, and interviewed him, on which occasion he made notes but took no written statement from the defendant; that before he questioned the defendant, he warned him that he was being investigated and that he did not have to answer any questions, and that any answers he made might be used against him. The defendant was asked how he felt about fighting against his Fatherland, and he replied, "I don't feel so good. * * * I don't want to fight against Germany. After all, it is my Fatherland." When reminded of his citizenship papers and that this was his country, he replied, "Yes, but you can never forget something in the blood." Lieut. De Love replied, "In other words, you don't want to fight against Germany, do you?" The defendant replied, "No, I never will." When asked why, he said the war was a racket and stated further that the United States should not fight Germany or Japan, that if he were to fight against Japan, it would be fighting Germany, that Germany and Japan were one and the same and he did not want to fight Japan. When asked how he could be a citizen of two nations, he said, "Well, I was a citizen here, but now, under the circumstances, I don't want to be a citizen." Lieut. De Love asked, "You mean to say you would rather give up your citizenship than fight Germany?" He replied, "That's right." When asked by Lieut. De Love why he felt that way, he replied, "Well, I admire Hitler, I think he is the greatest man that ever lived," that he believed in and admired Nazi principles, and that he attended Bund meetings but did not belong.

The defendant was summoned again before Lieut. De Love on January 27, 1942. He was again warned as to his right not to make a statement. A stenographer was called in and a written statement taken

down. After the statement was written up, Lieut. De Love took the defendant to Capt. Ure, the Post Adjutant.

Capt. Ure testified that on January 27, 1942, the defendant was brought before him. The statement was handed to Capt. Ure by Lieut. De Love, and he read it and questioned the defendant as to whether he had made the statement voluntarily, and he said that he had. Capt. Ure warned the defendant as to his rights. He then questioned him further as to each statement contained in the written instrument and the defendant admitted to making all of them. Capt. Ure testified that the defendant "seemed rather sullen and set in his ways, and seemed determined" and understood what he was doing.

Because of the serious nature of the statements in the affidavit, Capt. Ure took the defendant at once before Colonel Rogers, Commanding Officer. Capt. Ure was careful to see that the defendant understood what he was doing. The defendant said nothing to Colonel Rogers or in Capt. Ure's presence about the defendant's understanding that the paper he signed was a request to be transferred to a non-combat unit.

The affidavit was admitted into evidence without objection and read to the court. The Government rested, and the defendant took the stand in his own behalf. He testified that at the time he took the oath of allegiance, he meant to forswear allegiance to Germany; that he swore to live up to the laws of the United States, and that he was attached to the principles of the United States Constitution. The defendant further testified that on or about January 24, 1942, he was called from the drill field to Lieut. De Love's office for the purpose, as he was told, of translating a letter written in the German language; that Lieut. De Love began talking politics and that the defendant "told Lieutenant De Love I was a soldier, and I can't afford to talk about politics"; and that he became nervous. He admitted attending Bund meetings; he said he had a mother and father and some other relatives in Germany. He testified he was asked if he were forced to shoot his father and mother whether he would do it, to which he replied, "That is murder, and has nothing to do with soldiering" but that Lieut. De Love insisted that to be a good American he would have to shoot his father and mother. This was denied by Lieut. De Love. The defendant further testified that he became so nervous that he started to cry. Lieut. De Love took down the answers and made him read them, and the defendant said, "I can't read that handwriting." Lieut. De Love told him he should transfer to a non-combat unit, such as Quartermaster, and told him if he would sign the record, he would personally see that the defendant obtained such a transfer; and so believing, the defendant signed the record. Lieut. De Love categorically denied that he told the defendant he would have him transferred to a non-combat unit. Then he was taken to Capt. Ure, who hesitated about signing the statement. The defendant testified that Lieut. De Love then took him to Colonel Rogers who, after reading the affidavit, said, "Do you know you are going to the penitentiary for this?" to which the defendant replied, "Well, that is supposed to be just a record, and Mr. Lieutenant De Love promised me if I signed this, I was going to get a transfer to a non-combatant unit, and that is the reason I signed that record." Both Lieut. De Love and Capt. Ure denied that the defendant said this to Colonel Rogers. The defendant testified that this was the first time he was told that the statement was going to be used against him, and that after talking to Colonel Rogers, he fainted. Lieut. De Love denied that the defendant fainted. Capt. Ure testified he did not remember any such incident. When asked on cross-examination, the defendant did not deny that Capt. Ure read his signed statement to him but said he could not recall. This was the affidavit which he had referred to as the record. The defendant saw Lieut. De Love several times in the guardhouse and on one occasion talked to him about his promise that if the defendant signed the record, he would be transferred to a non-combat unit, to which Lieut. De Love replied, "You are now in a non-combatant unit." This was denied by Lieut. De Love. The defendant had a couple of physical checkups while in the guardhouse and testified he was told he was going to be discharged.

The defendant then produced a married woman who testified that she had known him eighteen years and that he was an honest, sincere and good man. She then gave some negative testimony that she had never heard the defendant make any statements derogatory of the United States or that he did not believe in the Constitution. She never heard him say he wanted Germany or Japan to win the war.

At the request of the defendant, the court gave permission for the record of the court martial to be introduced into evidence, but with the distinct understanding that either side could refer in its brief to any part it thought material, and only that part would be considered by the court. There is no indication on the record here that any part of the court martial record was ever referred to the court or that the court ever referred to the court martial record or relied upon it, in rendering the judgment appealed from.

The hearing of the evidence was completed on April 21, 1947. On June 20, 1947, the court ordered briefs filed. On April 21, 1948, the court ordered the defendant to file on or before May 3, 1948, an answer to the complaint of September 4, 1942, and on May 3, 1948, the defendant filed his answer admitting the first five paragraphs of the complaint and denying paragraphs 6, 7 and 8, which we have heretofore set forth in the margin. The defendant further denied the truth of an affidavit of an agent of the Federal Bureau of Investigation attached to the complaint.

On November 4, 1948, the court made findings of fact and stated its conclusions of law thereon. The court found that at the time of filing his petition for naturalization, the defendant was not attached to the principles of the Constitution of the United states; that at the time he was admitted to citizenship, he did not in good faith intend to renounce absolutely and forever all allegiance and fidelity to the German Reich; that when he took his oath of allegiance, he did not intend in fact to support the Constitution and laws of the United States against all enemies, and did not intend to bear true faith and allegiance to the same, but did in fact intend to remain a subject of the German Reich and main-

tain his allegiance thereto; that the statements made by him in the affidavit executed by him on January 27, 1942, were made freely without coercion or intimidation and expressed his real sentiments; and that he had been afforded a fair and impartial trial on November 24, 1942.

Upon these findings, the court concluded that the affidavit he signed was admissible against him in evidence; that the evidence is of such a clear and unequivocal and convincing character that it does not leave any doubt that the defendant fraudulently and illegally procured his naturalization; that the certificate of naturalization was issued to him through fraud and illegality; and that the order for his naturalization should be vacated and the certificate cancelled. The court thereupon pronounced judgment that the order of November 7, 1946, vacating the judgment of November 24, 1942, which cancelled the naturalization proceedings of September 19, 1940, should be vacated and set aside; that the decree of November 24, 1942, vacating the order of the court of September 19, 1940, admitting the defendant to citizenship, be confirmed and restored in full force and effect; and that the petition for rehearing filed herein by the defendant on March 27, 1946, be denied, and his certificate of naturalization cancelled. It is from this order that the present appeal has been taken.

We have set forth this record at length and chronologically as it was made, as we think it clearly demonstrates the intent and purpose of the District Court to give the defendant every opportunity to prove his charges, substantial or otherwise. It is very difficult for us to understand how the judgment of November 24, 1942, more than three years old, could be vacated on a petition for rehearing, whether it be designated a petition for rehearing or something else. The judgment was not void on its face. Rule 60 of the Federal Rules of Civil Procedure provides that a judgment may be vacated for "mistake, inadvertence, surprise, or excusable neglect" made within six months, but "This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57

of the Judicial Code, U.S.C., Title 28, § 118, a judgment obtained against a defendant not actually personally notified."

By this rule, it seems to us, a distinction is made between a motion and an action. Since this was a motion, it was not made within six months. Was it an action? An action is a new proceeding and must have parties plaintiff and defendant, and no such proceeding was had. Whatever was done was done in the old proceeding, as if it could be opened up by the motion of March 27, 1946. There was nothing in this motion that warranted the court in opening the judgment, and the Government's motion to dismiss should have been sustained.

When the District Court vacated the judgment of November 24, 1942, it did so, as it stated, because the defendant had alleged in his petition for rehearing that his judgment of conviction in the court martial, which was based upon the statements made in the affidavit, had been reversed and set aside by the reviewing authorities of the War Department. This was not true. The amount of time the defendant was required to serve in prison was reduced, but the conviction was approved.

The District Court also seemed to rely principally upon Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. ——, for the extraordinary proceeding of opening this judgment, more than three years old, on a petition for rehearing. In the Klapprott case, the petition filed there sought to vacate a judgment taken by default under most extraordinary circumstances and without hearing any evidence; the petition was denied, and Klapprott was not permitted in the District Court to make a showing as to the facts in his case. The Supreme Court applied the Federal Rules of Civil Procedure, as amended on March 19, 1948, although they were not in effect at the time the lower court acted in that case, as they were not when the petition for rehearing was filed in this case. But as we understand the Klapprott case, it relied upon the fact that the default judgment was taken under most extraordinary circumstances. No proof was offered and of course the defendant was not in court.

Such cannot be said of the judgment in this case. Here the defendant was in court when his citizenship was first forfeited. He appeared before Judge Holly, an able judge and one of the kindliest and most considerate of men, who heard the defendant in open court as well as by answer confess the allegations of the complaint and tell the court he did not want counsel. Also, evidence was heard in support of the complaint.

We feel bound by the rules the Supreme Court makes to govern our procedure, and we are confident that the motion filed herein on March 27, 1946, should be governed by the old rules and stated no grounds for relief. Although the Supreme Court in the Klapprott case applied the rules as amended before they were amended, we do not feel at liberty to do so. However, we do not rest the decision of this case upon the procedural errors made pursuant to the motion for rehearing filed March 27, 1946.

On these total proceedings the defendant raised two questions, what he designated a technical defense, and the unsubstantiality of the proof. The so-called technical defense is spelled out as follows. The petition for rehearing was in effect a new suit, and the Government's motion to dismiss admitted the facts pleaded. No answer to the petition was filed by the Government and a decree was entered upon the admitted facts. This decree was not appealed from and is final, and all the hearings subsequent are for naught. This argument is without merit, technical or otherwise. First, a motion to dismiss, which replaced the old demurrer (Rule 7(c) and Rule 12(b), Federal Rules of Civil Procedure) admits the facts well pleaded only for the purpose of testing the legal sufficiency of the pleading. Second, if this were a new suit, as the defendant contended, the Government had not consented to be sued, and the Government cannot be sued without its consent. Mine Safety Co. v. Forrestal, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140. This was one of the grounds urged by the Government in its motion to dismiss. Evidently the court did not consider it a new suit, and all the proceedings were had in the old suit and under its old

docket number. Next, overruling of the Government's motion to dismiss was not a final judgment from which the Government could appeal. Savell v. Southern Ry. Co., 5 Cir., 93 F.2d 377, 379, 114 A.L.R. 1261; Mellon v. Mertz, 58 App.D.C. 302, 30 F.2d 311. Finally, a default could not be taken against the Government. The defendant was bound to prove the allegations of his petition. Rule 55(e), Federal Rules of Civil Procedure.

■ We now consider the substantiality of the proof. At this stage of the proceeding, the District Court had a complaint confessed by answer, and the court having vacated the judgment, the issues stood as a complaint with an answer in confession and a petition seeking to avoid the effect of that confession. This sufficiently tendered an issue for hearing. See United States v. Kiriaze, 5 Cir., 172 F.2d 1000, 1002. On this state of the pleadings, the parties went to hearing, a full-fledged hearing was had, and the defendant was given every opportunity to sustain his contentions. After the hearing was had, the defendant, on the order of the court but without protest, filed an answer in denial of the complaint.

On the proof, there is conflict between Lieut. De Love and Capt. Ure, and the defendant. The District Court believed Lieut. De Love and Capt. Ure and held that the defendant had not sustained the allegations he made in his petition. The question is whether that evidence is sufficient to support the findings that the defendant obtained his naturalization and certificate of citizenship fraudulently. That is to say, did he, at the time he took the oath of allegiance to this country, have a mental reservation as to where his allegiance lay? Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525. Did he at that time in good faith renounce his allegiance to the German Reich and in good faith pledge his allegiance to the United States, its Constitution and laws, and in good faith pledge fealty to the United States against all its enemies? That the court accepted the testimony of Lieut. De Love and Capt. Ure seems to us as quite reasonable. They were honorable men, unimpeached, who had served their country faithfully in war against its enemies. The defendant in the early months of 1942, after we had been in the war only a few short months and Hitler was crushing all opposition in Europe and we had suffered the worst defeat in our history in the Pacific, chose to ride along with this country's enemies. He was sullen and determined about it, as the witnesses testified, and knew what he was talking about and the import of his acts. But after Hitler was dead in the bunker in Berlin and the terror of Hiroshima and Nagasaki had brought the Japanese Empire to terms, the defendant chose to go along with the United States. He said in 1942 that he believed in and admired the Nazi principles and that he thought Hitler was the greatest man in the world. This same Hitler had been the head of the German Reich in 1940 when the defendant took his oath of allegiance to the United States and when the Nazi principles dominated Europe and were reaching for the world. How one in 1942 could affirm in sullen and determined manner his admiration for Hitler and the Nazi principles and so recently as 1940 have taken oath that he believed in and embraced the Constitution and laws of this country and have foresworn his allegiance to his great idol Hitler and the German Reich, was a bit difficult for Judge Holly to believe. He did not believe the defendant made his oath of allegiance and citizenship in good faith in 1940. He believed that the defendant spoke his real sentiments when he signed that affidavit and when he filed that answer in court and appeared and told the court that was what he believed and wanted to do. Therefore, Judge Holly reached his conclusion that the defendant acted fraudulently in 1940. It seems to us he could not reasonably believe otherwise of a man who put on and took off his obligation of citizenship with such complete ease and sullen determination.

■ We think the evidence amply sustains the court's findings that when the defendant took the oath of allegiance to this country in 1940 and renounced his allegiance to the German Reich, he did not do it in good faith but did it fraudulently.

His American citizenship was a thing to be put on or taken off as the fortunes of war might indicate. This record does not reveal the image of a man who was devoted to this country and its institutions when he took the oath of allegiance in 1940, but rather of one whose devotion had always been to Hitler and the Nazi principles. His early repudiation of his oath of allegiance indicates to us that he at no time acted in good faith.

We think that the evidence clearly sustains the findings of the court, the findings support the conclusions of law, and the conclusions of law sustain the judgment. On this record, it is plainly apparent that the defendant is entitled to no relief.

The judgment of the District Court is affirmed.