CANAL ZONE CENTRAL LABOR UNION AND METAL TRADES COUNCIL, AFL–CIO, an employee-labor organization, Paul W. Bramlett, an employee of the Panama Canal Company, Pauline F. Blaney, an employee of the Canal Zone Government, Albert F. Hanson, an employee of the Canal Zone Government, James J. O'Donnell, an employee of the Panama Canal Company, Lydia M. Myers, an employee of the Canal Zone Government, Plaintiffs,

v.

Robert J. FLEMING, Jr., Governor of the Canal Zone and President of the Panama Canal Company and Stephen Ailes, Secretary of the Army and Sole Stockholder in the Panama Canal Company, Defendants.

Civ. No. 5858.

District Court, Canal Zone
Balboa Division.

Nov. 9, 1965.

As Amended Nov. 10, 1965.

Albert J. Joyce, Jr., Balboa, Canal Zone, for plaintiffs.

Rowland K. Hazard, U. S. Atty., Balboa, Canal Zone, for defendants.

CROWE, District Judge.

This action was begun by plaintiffs on November 12, 1964 by the filing of a complaint praying for a declaratory judgment that certain regulations promulgated by the defendant, Secretary of the Army, are invalid and for an injunction restraining the further implementation of the regulations.

The Canal Zone Government is an independent agency of the United States administered by a Governor under the supervision of the President or such officer of the United States as may be designated by the President. 2 C.Z.C. 31. The President has delegated this supervision to the Secretary of the Army under Ex. O. 10595, 3 C.F.R. (1954–58 Comp.) p. 242, United States Code Congressional and Administrative News, 1955, p. 1058.

The Panama Canal Company is a corporate agency and instrumentality wholly owned by the United States. 2 C.Z.C. 62. The Governor serves, ex officio, as president of the Company. 2 C.Z.C. 64.

Wage and employment practices of both the Government and the Company are regulated by Subchapter III of the Canal Zone Code, 2 C.Z.C. 141 et seq.

2 C.Z.C. 155 provides:

"(a) The President shall coordinate the policies and activities of the respective departments under this subchapter, and may promulgate regulations necessary and appropri-

ate to carry out the provisions and accomplish the purposes of this subchapter.

"(b) The President may delegate any authority vested in him by this subchapter, and may provide for the redelegation of any such authority. 76A Stat. 19."

President Johnson delegated his power under the statute to the Secretary of the Army in Ex. O. 11171 of August 20, 1964, 29 F.R. 11897 United States Code Congressional and Administrative News, 1964, p. 4209.

For many years the employees of the Canal Zone Government and the Panama Canal Company, and before the creation of these entities, the employees of the preceding organizations received a 25 per cent overseas (tropical) differential. On July 28, 1964, the Secretary announced his proposal to modify the differential on the basis that environmental and cost-of-living factors, which at one time may have justified it, no longer exist.

The Secretary on July 29, 1964 modified the existing regulation, 5 C.F.R. 1204.12 by publishing in the Federal Register an interim regulation which froze the differential for each U. S. citizen employee in the dollar amount authorized for him as of July 20, 1964 and prohibited further increases in the differentials pending further revisions of the regulations.

On October 10, 1964 the Secretary published in the Federal Register a regulation which superseded and terminated the interim regulation. The new regulation, 29 F.R. 14024, provides that the tropical differential be fixed at 15 per cent of the basic compensation as to employees newly hired. As to employees currently on the payrolls, with certain exceptions, the dollar amount then being paid would not be reduced, but would be retained at the fixed dollar amount, without increase during future pay raises, until such time as 15 per cent of a given employee's attained salary should exceed his fixed dollar amount of differential. In other words, the 25 per cent differen-

tial would be gradually reduced to 15 per cent.

The new regulation excludes from the differential married women whose husbands reside in the Canal Zone or the Republic of Panama and children of such residents who are minors or who do not maintain separate households. (The termination date of their differentials becomes effective two years after the effective date of the regulation.)

The fixed or frozen differential as to the employees currently on the payroll was calculated as of July 5, 1964. Subsequent to that date the Canal Zone Government and the Panama Canal Company granted increases in basic compensation to their employees similar to the increases enacted in P.L. 88–426, the Government Employee's Salary Reform Act of 1964, 78 Stat. 400. These increases were retroactive to the first pay periods in July (July 5, 1964) but were not considered to affect the retained differential which had been set at the amount currently due as of July 20, 1964. In other words, the retroactive pay increase created a condition whereby the employees suffered an immediate diminution from the 25 per cent.

Plaintiffs Paul W. Bramlett and James J. O'Donnell are employed by the Panama Canal Company and were so employed on July 20, 1964. Bramlett is a control house operator in the non-manual category and O'Donnell is a senior operator in power branch group special category—wage board. Both allege adverse effects on their retirement benefits. Bramlett alleges a loss of $2.40 salary per pay period and O'Donnell alleges a loss of 23 cents per hour.

Plaintiffs Albert Hanson, Pauline Blaney and Lydia Myers are employees of the Canal Zone Government and were so employed on July 20, 1964. All three allege an adverse effect on their retirement benefits and Hanson, a window clerk in the postal group special category, alleges a reduction of $3.20 in his salary per pay period.

Plaintiff Blaney, a staff nurse in the non-manual category, alleges a reduction

of $1.60 in her pay per pay period, and plaintiff Myers, a nurse-anesthetist, alleges a reduction of $2.40 in salary per pay period. Both allege that as they are married female employees the regulation discriminates against them by reason of their sex and marital status and that within a period of two years they will each be deprived of any tropical differential.

They further complain that the regulation is in contravention of Ex. O. 10980 of December 16, 1961 (26 F.R. 12059) United States Congressional Code and Administrative News 1962, p. 4252, in which the President set forth his desire to assure non-discrimination on the basis of sex and to enhance constructive employment opportunities for women in the employ of the United States Government and its agencies.

The plaintiff, Canal Zone Central Labor Union & Metal Trades Council, AFL–CIO alleges that the defendant, Ailes, promulgated the regulation and defendant, Fleming, implemented and effectuated it in the Canal Zone without first consulting with this plaintiff. It claims formal recognition under Ex. O. 10988 (3 C.F.R. (1959–63 Comp.) p. 521, United States Congressional Code and Administrative News, 1962, p. 4269, and alleges that under section 5(b) of that Order it was entitled to be consulted prior to the formulation or modification of rates of pay and compensation of Canal Zone Government and Panama Canal Company employees.

There are no questions of fact except concerning the matter of consultation with the plaintiff trade union. Counter affidavits have been submitted on that question.

The Secretary of the Army has not been served with process and has not entered his appearance.

As the interim regulation published on July 29, 1964 has been superseded and terminated by the regulation issued on October 10, 1964, 29 F.R. 14024, its terms will not be discussed in this opinion.

The code provision in question is Title 2, Canal Zone Code, 146, as follows:

"§ 146.  Additional allowance and differential

"In addition to established basic compensation, there shall be paid to each employee who is a citizen of the United States such amounts as the head of the department concerned determines to be payable, as follows:

"(1) an allowance for taxes which operate to reduce his disposable income in comparison with the disposable incomes of those employees who are not citizens of the United States; and

"(2) an overseas (tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation so established and the amount of the allowance provided in accordance with paragraph (1) of this section.  76A Stat. 17."

## OPINION

### 1.

■  Defendants proceed on the premise that Title 2, Canal Zone Code, Section 146 without doubt reposes in the "head of the department concerned" the discretionary authority to establish or not an overseas differential as long as it does not exceed 25 per cent of the aggregate amount of the rate of basic compensation paid to the U. S. Citizen employee. They assume the position that "there is nothing in any statute or executive order which requires that a tropical differential in any fixed amount be paid to such employees in the Canal Zone."

Such a position is erroneous as the only reasonable interpretation that can be put upon Section 146 supra is that it is mandatory and that the differential shall be 25 per cent but "not in excess" of that sum. If any other construction is placed upon the meaning of the section it will lead to the intolerable differences and conditions that are the reason for this lawsuit.

Under the weird concoction that has been issued from the office of the Secretary of the Army we are confronted with a condition where two nurses, being U. S. citizens of the same age, education, and training, will work side by side doing the same work and one will receive at least 15 per cent less than the other merely because she is married. The same constant tropical heat will affect them both, and they will be exposed to the same living conditions overseas away from their homes, relations and friends and the same inability to own property will prevail upon them. They will be subject to the same regimentation and tropical illnesses pointed up in the Booz-Allen Report set out in plaintiffs' brief yet they will not receive the same pay. The nurses situation is typical and not special for the same odious comparisons prevail among many others and will continue to prevail if defendants' position is maintained.

Under the regulation, if a married woman is "legally separated" from her husband and is a U. S. citizen employee, she can receive the differential. Marriages are hard enough to conserve in the Canal Zone with all of the problems brought about by the life here and a regulation such as this not only will contribute to bring about separations by connivance but actual disruption of what would be successful unions under other circumstances. In effect, a premium is awarded for terminated marriages.

Congress did not intend a situation like this to exist and although a first reading of the section may lead one to believe that discretion was conferred on the proper officer, a careful analysis of its language leads only to the conclusion that such is not the case.

Defendants assume the position that because the word "determine" ordinarily implies discretion and the words "in excess of" frequently connote a sum less than but not greater than, that that is their meaning here, but this is not true. "Determine to be payable" here means to calculate along fixed lines without discretion, and the words "in excess of"

have no preliminary words or phrases that would lend to them the meaning that less could be paid than the amount prescribed.

The introductory paragraph is unequivocal in saying that there "shall" be paid to each U. S. citizen employee such amounts as the head of the department "determines to be payable". This does not mean that the department head can determine arbitrarily an amount that he would like to pay, but he must pay an amount to be determined in accordance with the language of the subparagraphs.

Subparagraph (1) leaves no room for doubt that he must determine to be payable "an allowance for taxes" which will permit the U. S. citizen to come out with the same net after payment of U. S. taxes that the non-citizen employees realize as a result of being exempt from payment of U. S. taxes. The department head has no option and must determine this amount "payable" after proper mathematical calculation that will make to them a compensatory "allowance for taxes".

He must also just as surely determine to be payable in accordance with subparagraph (2) "an overseas (tropical) differential not in excess of an amount equal to 25 per cent" of the amount of the employee's aggregate compensation. This does not mean that he can pay less than 25 per cent. The language of the act does not give him the authority to diminish, differentiate between married and unmarried women, nor do away with the differential completely in other cases as the Secretary's regulation would do. It merely places a maximum on the amount to be paid. If Congress had wished the employment authority in the Canal Zone to have the power to scale down the differential in accordance with changing conditions or the whims of the Secretary of the Army, it would have said so but it did not. Instead it said in the opening paragraph of section 146 and in subparagraph (2) when read together that there "shall" be paid to the U. S. citizen employee a 25 per cent tropical differential which the "head of the de-

partment concerned" must compute, but the differential must not be more than 25 per cent of the aggregate basic compensation of the employee including the tax allowance. (See footnote.[1])

### 2.

■ Defendants assert that the Secretary of the Army is an indispensable party. The Secretary has not entered his appearance to the action and is taking advantage of the difficulties encountered by plaintiffs in perfecting service on him. Such a maneuver is obviously designed to hinder a determination of this action in a proper forum on its merits and should not be indulged in by a high U. S. official. Personal service on him in the Canal Zone is almost impossible because of his unheralded entries and the close military protection surrounding him.

The Canal Zone Government and the Panama Canal Company are under the control and direction of the Secretary of the Army, and the Governor of the Canal Zone and President of the Panama Canal Company is a Major General in the Army. The Lt. Governor of the Canal Zone Government and Vice-President of the Panama Canal Company is a Colonel in the Army. All of the thousands of employees in the two organizations are under the Secretary and subject to his regulations. In addition, the headquarters of the Southern Command are located here with a staff of generals and subordinates directing all of the activities of the military missions in every country in Central and South America with thousands of supporting military personnel.

Large training programs and schools are conducted here for the military under the direction of the Secretary and his aides and extensive airports are maintained by the military with military aircraft flying regularly from the Canal Zone to Washington and vicinity.

The Panama Canal Company has a large staff of lawyers in the Canal Zone who are ready to serve the Secretary at a moment's notice. There is a United States District Attorney and his assistant and supporting personnel in the Canal Zone and the Army maintains a large staff of legal officers here.

The Secretary visits the Canal Zone periodically and the under secretaries and the Secretary's aides and subordinates are in and out of the Canal Zone frequently.

All of the information and data relative to this litigation and the people concerned in it are here or easily available and the Department of Justice can render its wonderfully efficient service to the Secretary, as fully evidenced by the extensive pleadings and carefully prepared briefs in the case at bar.

Were this merely litigation designed to annoy without merit and no real principle involved the failure of entry of appearance would be understood but such is not the case. This is a cause affecting the livelihood and welfare of thousands of well-trained, conscientious American citizens who are entitled to have their rights adjudicated, and this court is the most logical and convenient forum.

Congress has recognized the need to make it possible to bring actions such as this against Government officials and agencies in the United States District Courts outside the District of Columbia by the adoption of 28 U.S.C. 1391(e) (Supp.1962) which provides for service by "registered mail". Unfortunately it is limited to United States District Courts and these courts are enumerated in 28 U.S.C. 81–144 and the Canal Zone court is not included although courts farther from Washington, such as those of Hawaii and Alaska, are included.

With these conditions in mind it is incumbent on this court to give relief to the litigants if possible.

---

1. This ruling is made with full realization that there may be other maximum salary limitations imposed by law on U. S. employees. Such limitations have not been cited by counsel in their arguments and this opinion does not attempt to determine their effect on Canal Zone employees. See 1964 Pay Act, P.L. 88–426, Sec. 102, 308; 5 C.F.R., Chap. II, 1204.-12(d).

Title 2 C.Z.C. 31 provides that the Canal Zone Government, an independent agency of the United States, shall be administered by the Governor of the Canal Zone. This is to be under the supervision of the President or his designee and as previously stated, he has designated the Secretary of the Army to act.

Title 2 C.Z.C. 31 provides that the Governor shall have official control and jurisdiction over the Canal Zone and Section 101 of the same title authorizes and charges him with the appointment of all officers and employees of the Canal Zone Government and the duty of prescribing their compensation.

Title 2 C.Z.C. 61 and subsequent sections of Chapter 5 prescribe for the continuation and organizational activities of the other principal U. S. entity here, which is the Panama Canal Company. Section 62 provides that the President of the United States or his designee shall be known as the "stockholder" and shall represent the United States in its capacity as owner of the Company and as previously stated, the Secretary of the Army has been designated as the stockholder.

Section 64 of the chapter prescribes that the Governor "shall serve, ex officio, as president of the Panama Canal Company"; Section 121 provides for the corporate acts of the Company in appointing its "officers, agents, attorneys, and employees" and fixing their compensation, and Subchapter III of the same title provides for the "Wage and Employment Practices", all under the direction and control of the department heads who in turn are under the immediate direction and control of the Governor.

It is quite clear therefore that an injunction entered restraining the Governor and President of the Panama Canal Company from implementing the regulation in question would grant the relief desired. There is no question that this is a proper remedy and that it may be pursued against him although his superior officer is not before court. State of Colorado v. Toll, Supt. of Rocky Mountain National Park, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; State of Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641; Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570.

Were the Secretary before court, and he is named as a party defendant in plaintiffs' attempt to make him a party, a decree of injunction against him would be no more effective than it would against the defendant Governor-President who has the sole responsibility and authority in the Canal Zone to implement the regulation. See Berdie et al. v. Gurtz et al., 9 Cir., 75 F.2d 898. In Shaughnessy, District Director of Immigration, etc. v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868, the court rejected the Government's contention that the Commissioner of Immigration and Naturalization is an indispensable party and said:

"It seems highly appropriate, therefore, that the District Director charged with enforcement of a deportation order should represent the Government's interest. Otherwise in order to try his case an alien might be compelled to go to the District of Columbia to obtain jurisdiction over the Commissioner. To impose this burden on an alien about to be deported would be completely inconsistent with the basic policy of the Administrative Procedure Act to facilitate court review of such administrative action. We know of no necessity for such a harsh rule. *Undoubtedly the Government's defense can be adequately presented by the District Director who is under the supervision of the Commissioner.*" (Italics supplied)

The chain of command is direct from the Secretary of the Army to the Governor-President thence to the employees of the two entities throughout the Canal Zone so an injunction stopping the Governor-President would terminate the action and grant the relief sought.

### 3.

The regulation states that the tropical differential shall be paid to em-

ployees who are U. S. citizens except those in the following categories:

"(1) A married woman whose husband resides in the Canal Zone or the Republic of Panama. This exclusion shall not apply to such a married woman if she establishes to the satisfaction of her department that:

"(i) Her husband is physically or mentally incapable of self-support.

"(ii) She is legally separated; or

"(iii) Her husband is 51 percent dependent upon her for his support.

"(2) A child or stepchild of a resident of the Canal Zone or the Republic of Panama who is under 21 years of age and unmarried or who, regardless of age or marital status does not maintain a separate household."

The retained rate of tropical differential under the regulation shall continue to be paid to people in the above categories, however, until there is a break in service of one day or more or a two-year period has elapsed since the effective date of the regulation.

This part of the regulation is certainly discriminatory against married women and is violative of Title 2, C.Z.C. 146 wherein it states that "there shall be paid to each employee who is a citizen of the United States" an overseas tropical differential. The section is clear and emphatic that "each employee" receive the differential and any variation from that plan is a violation of the Congressional mandate.

### 4.

■ As stated, the payment of the differential of 25 per cent to the individual plaintiffs herein is a right based upon a statute. This right has been injured by the action of the Secretary in promulgating a regulation to reduce the differential as has been alleged in the complaint, and it is undenied that these five plaintiffs have suffered immediate monetary losses by the reduction in their differentials. These reductions are not vague, imaginary possibilities of the future but are real and present and subject to calculation.

As argued by the defendants, "the touchstone of justiciability is injury to a legally protected right * * *" See Frost v. Corporation Commission, 278 U. S. 515, 49 S.Ct. 235, 73 L.Ed. 483.

A general pay increase occurred almost simultaneously with the implementation of the interim regulation so the damage and injury has been personal to the five individual plaintiffs and fully calculable. The case retains all of the essentials of an adversary proceeding involving a real and not a hypothetical controversy. See Poe v. Velman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989; United Public Workers v. Mitchell, 330 U.S. 75, 67 S. Ct. 556, 91 L.Ed. 754.

There is, therefore, no question that the five individual plaintiffs have standing to sue.

### 5.

■ The plaintiff, Canal Zone Central Labor Union and Metal Trades Council, AFL–CIO, does not have standing to sue as a result of Executive Order 10988 (3 C.F.R., 1959–63 Comp., p. 521). As stated by defendants' counsel, it is no more than a declaration of policy by the President for the internal management of the Executive Branch of the United States Government enforceable only by the President through administrative measures. It is not based upon a statute nor a provision of the Constitution and thus the courts have no jurisdiction over an action for enforcement.

A similar question was raised covering the same Executive Order in International Organization of Masters, Mates & Pilots, etc. v. Panama Canal Company, etc., Civil Number 2654, Canal Zone District Court, Cristobal Division (not reported) and the motion of defendant for summary judgment was sustained. The question was carefully considered in the United States Court of Appeals for the District of Columbia Circuit in Man-

hattan-Bronx Postal Union et al. v. Gronouski, etc., 350 F.2d 451, decided July 29, 1965 wherein it said:

"If appellants disagreed with the Postmaster General's decision as to this aspect of personnel policy, and believed it to be contrary to the President's wishes, it is obvious to whom their complaint should have been directed. It was not to the judicial branch. Congress has given the District Court many important functions to perform, but they do not include policing the faithful execution of the Presidential policies by Presidential appointees."

See also the decisions involving attempted enforcement of claims for overtime arising allegedly under Executive Order 9240 (7 F.R. 7159). The courts held that they lack jurisdiction in these cases. Sweet v. B. F. Goodrich and Co., D.C., 68 F.Supp. 782; Crabb v. Welden Bros., 8 Cir., 164 F.2d 797, and McDaniel v. Brown and Root, 10 Cir., 172 F.2d 466. See also Farmer v. Philadelphia Electric Co., D.C., 215 F.Supp. 729; 329 F.2d 3.

### 6.

■ This is not an unconsented suit against the United States but is an action to restrain Government officers from violating a statute. The plaintiffs are not asking that the Secretary nor the Governor nor the United States be made to do any affirmative act in this suit.

The Secretary is attempting to read into a clearly mandatory law directing something specific to be done that he can exercise his discretion where no discretion is given. If such conduct were to be permitted without court intervention the individual would be left to the uncontrolled and arbitrary action of a public administrative officer, whose action is unauthorized by law. See American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

Matters committed by law to agency discretion are generally not judicially reviewable as has been held by this court. Doyle v. Fleming, D.C., 219 F.Supp. 277.

In the case at bar no discretion is conferred.

As set out in plaintiffs' brief:

"Where a federal official attempts to perform an act which is in excess of his authority or under authority not validly conferred, equitable action will lie to restrain him without the sovereign being a party." Continental Bank & Trust Co. v. Woodall, 10 Cir., 239 F.2d 707; Lane v. Watts, 234 U.S. 525, 34 S.Ct. 965, 58 L.Ed. 1440; State of Colorado v. Toll, Supt. of the Rocky Mountain National Park, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927 (supra); State of Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641; Mine Safety Appliance Co. v. Forrestal, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140; Philadelphia Co. v. Stimson, Secretary of War, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570.

The ultimate effect of restraining the Secretary and the Governor-President from noncompliance with the statute may be the expenditure of funds from the United States Treasury in payment of the differential due the Canal Zone Government employees but that is not the question here. The only relief requested in this action is injunctive to restrain these officers from an arbitrary refusal to obey the law.

The question of the failure to consent by the United States of course is not raised nor could it be countenanced as between the two Panama Canal Company employees and Fleming as President of the Panama Canal Company. Suits against the Company are authorized under Title 2, C.Z.C. 65(a) (3).

### 7.

■ The tropical (overseas) differential of 25 per cent has been paid to U.S. citizen employees in the Canal Zone since the Panama Canal Act (37 Stat. 560, 569) of August 1912 and has been regarded in many wage practices relating to the Canal Zone since that time as basic compensation.

In addition to Title 2, C.Z.C. 146 (supra), the section which fixes the 25 per cent differential, two other sections in the same Chapter 7 dealing with compensation of Canal Zone Government Employees and Panama Canal Company Employees prescribe the differential. The first, Section 101(b), limits the Governor in prescribing compensation for the Canal Zone Government employees to "the compensation paid for the same or similar services to persons employed by the Government in the continental United States", and states that this compensation may not exceed their compensation by 25 per cent. The footnotes to this section of the Code state:

"The authority contained in this section to appoint, remove and compensate employees of the Canal Zone Government has been substantially superseded by the Canal Zone Wage and Employment Practices Act of July 25, 1958 (section 141 et seq. of this title), referred to above, which established the Canal Zone Merit System, and which vests authority directly in the head of the agency. However, the provisions carried into this section are retained because they are necessary for application to the few employees of the Canal Zone Government who are excluded from the Canal Zone Merit System."

The second section is Section 144(d) dealing with "Compensation" and is under Subchapter III which treats of the "Wage and Employment Practices" that prevail as to all others except the few mentioned in the footnote to Section 101 above, and is as follows:

"A *rate of basic* compensation established under this section may not exceed by more than 25 percent, when increased by the amounts of the allowance and the differential authorized by Section 146 of this title, the rate of basic compensation for the same or similar work performed in the continental United States." (Italics supplied).

Section 9 of Public Law 85–550 also describes the differential due U. S. citizen employees in the Canal Zone as basic compensation for certain purposes:

"BENEFITS BASED ON COMPENSATION

"Sec. 9. For the purposes of determining—

(1) amounts of insurance under the Federal Employees' Group Life Insurance Act of 1954, as amended (5 U.S.C. 2091–2103),[44]

(2) amounts of compensation for death or disability under the Federal Employees' Compensation Act, as amended (5 U.S.C. 751 et seq.),[45]

(3) amounts of overtime pay or other premium compensation,

(4) benefits under the Civil Service Retirement Act, as amended (5 U.S.C. 2251–2267),[46]

(5) annual leave benefits, and

(6) any other benefits which are related to basic compensation, *the basic compensation* of each employee who is a citizen of the United States *shall include*—

(A) the rate of basic compensation for his position established in the manner provided by section 5 of this Act, and

(B) the amount of the allowance and *the differential* determined in the manner provided by section 7 of this Act." (Italics supplied).

Prior to the passage of the Revenue Act of 1950, P.L. 814, H.R. 8920, Section 220, 64 Stat. 944 the employees of the United States or any agency thereof in the Canal Zone were exempt from income tax. Beginning after December 31, 1949 "amounts paid for services performed" by these people became taxable, and the Department of Internal Revenue has always construed this language to include the 25 per cent differential and has collected the tax accordingly.

A certain basic compensation must be established before the differential can be computed. Obviously the differential cannot be a part of that basic compensation as it must be computed before 25

per cent of it can be mathematically determined.

Also, the language of T. 2, C.Z.C., 146 (supra), which directs the payment of the differential, in stating in the opening paragraph that the differential shall be paid "in addition to established basic compensation", creates the thought that it is additive and not basic.

It therefore can be said that for some purposes it is considered as basic compensation and for others it might be regarded as additive.

In view of the fact that the statute in question is as forceful and mandatory in directing that the differential be paid as the statutes providing for the basic compensation based upon "the same or similar work performed in the continental United States by employees of the Government of the United States", the differential must be considered as basic compensation and the general rules governing wage and employment practices in the Canal Zone under the statutes must be applied when a change is contemplated.

### 8.

■ Plaintiffs are entitled to injunctive relief under the terms of Title 5, C.Z.C., Section 322, which provide:

"(a) An injunction may be granted when:

(1) it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;" or

"(6) the restraint is necessary to prevent a multiplicity of judicial proceedings;"

It is clear that plaintiffs are entitled to the "relief demanded" and that if the injunction is granted it will prevent literally hundreds of "judicial proceedings" for collection of amounts due as there are approximately 3500 Canal Zone Government and Panama Canal Company employees in the Canal Zone who are U. S. citizens and a great many are affected by the regulation.

The plaintiffs are not praying for the payment of monies in this action. They are requesting, however, that a Government officer and his subordinate be restrained from an arbitrary exercise of discretion where no discretion is authorized by law which has resulted and will continue to result in damage to the plaintiffs and for which there is no adequate remedy at law.

For these reasons and as above stated the prayer of the plaintiffs is granted, and it is held that the interim regulation of July 29, 1964 and the final regulation of October 10, 1964 are invalid. It is directed also that an order of injunction shall be prepared for the court's signature by counsel for the plaintiffs directing that the defendant, Robert J. Fleming, Jr., Governor of the Canal Zone and President of the Panama Canal Company forthwith be enjoined and restrained from implementing and enforcing the provisions of the regulation of the Secretary of the Army published on July 29, 1964 as an interim regulation freezing the 25 per cent differential and that he be enjoined and restrained from implementing and enforcing the provisions of the regulation superseding and terminating the interim regulation, which was issued and published by the Secretary on October 10, 1964 and contained in 29 Federal Register as 14024 and being Title 5, C.F.R. 1204.12 changing the overseas (tropical) differential of U. S. citizen employees in the Canal Zone, and that the order be served so that the defendant will be enjoined.