**Catherine NEUKIRCHEN,**
**Plaintiff–Appellee,**

v.

**WOOD COUNTY HEAD START,**
**INCORPORATED, Defendant–**
**Appellant.**

**No. 94–2133.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1994.

Decided April 27, 1995.

Michael R. Fox, Richard F. Rice (argued), Fox & Fox, Kristin J. Sederholm, Madison, WI, for Catherine Neukirchen.

Terrence J. Byrne, George Goyke (argued), Wausau, WI, for Wood County Head Start, Inc.

Donna Morros Weinstein, James Goeser (argued), Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL, Richard D. Humphrey, Asst. U.S. Atty., Peggy A. Lautenschlager, U.S. Atty., Madison, WI, for Donna E. Shalala, amicus curiae.

Before CUDAHY, ESCHBACH, and MANION, Circuit Judges.

MANION, Circuit Judge.

Catherine Neukirchen obtained a judgment exceeding $86,000 against Wood County Head Start on a claim for age discrimination. Wood County Head Start refused to pay the judgment, however, so Neukirchen moved for a writ of execution against Wood County Head Start's property. The district court partially granted this motion, issuing a writ allowing execution against Wood County property costing less than $1000, along with property purchased with non-federal funds. Wood County Head Start appeals. We affirm in part and reverse in part, and remand for further proceedings.

## I. Statement of the Case

Catherine Neukirchen, when she was fifty-two years old, applied to Wood County Head Start ("Wood County") for a position as a Central Manager or a Teacher Aide. Wood County refused to hire her based on her age and instead hired six younger applicants. Neukirchen sued Wood County for age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"). Following a trial, the jury returned a special verdict finding that Wood County had willfully discriminated against Neukirchen on the basis of her age by failing to hire her for either position and awarded her back and front pay. The court entered judgment in favor of Neukirchen in the amount of $87,275.02.

Neukirchen then attempted to collect this judgment from Wood County. Wood County was apparently willing to compensate Neukirchen for its discrimination—at least at first. This is evidenced by correspondence between Wood County and the Department of Health and Human Services ("HHS")—the agency charged by Congress to implement Head Start—indicating that Wood County planned to use $70,000 of surplus funds to pay Neukirchen's age discrimination judgment.[1] HHS, however, directed Wood Coun-

ty not to use the funds to pay Neukirchen, and Wood County dutifully obeyed HHS' directive.

After Neukirchen's efforts to collect from Wood County proved futile, she moved for a writ of execution against Wood County's property. Wood County moved to quash the writ of execution. The district court granted the Motion to Quash, subject to discovery and briefing. After discovery and briefing, the district court held a hearing on Wood County's motion, after which it issued a writ of execution against all Wood County property with a unit acquisition cost of less than $1000, along with property purchased with non-federal funds. Wood County and the Secretary of Health and Human Services ("Secretary"), as amicus curiae, appeal.

## II. Analysis

On appeal, Wood County asserts that all property purchased with federal grant funds, including property costing less than $1000, constitutes federal property and as such is not subject to execution. Wood County also argues that property purchased with state funds is not subject to execution. We consider each issue in turn.

### A. Execution Against Property Costing Less Than $1000

The writ of execution issued by the district court allowed execution against Wood County property costing less than $1000, including property purchased with federal funds. Wood County and the Secretary argue that property purchased in whole or part with federal funds cannot be attached, no matter what the cost of the property.[2]

 It is clear in this circuit that property purchased with federal grant funds constitutes federal property. *In re Joliet–Will County Community Action Agency,* 847 F.2d 430 (7th Cir.1988) (holding that property purchased with federal grant funds did not be-

---

1. Wood County asks us to disregard this letter, claiming that it was not entered as part of the record on appeal. Wood County is incorrect. This letter is contained in the record. *See* Pleading Volume 3 Exhibit F.

2. Neukirchen does not attempt to distinguish between property purchased entirely with federal funds from that purchased only in part with federal funds. Therefore, we will treat identically property purchased in whole or in part with federal funds.

long to Joliet–Will but rather belonged to the federal government). It is also axiomatic that the doctrine of sovereign immunity prevents a judgment creditor from attaching federal property, absent consent by the United States. *Buchanan v. Alexander,* 45 U.S. (4 How.) 20, 11 L.Ed. 857 (1846) (holding that creditors of crew members of the frigate *Constitution* could not garnish their debtors' wages because "so long as the money remained in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury"); *F.H.A. v. Burr,* 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940) (absent waiver of sovereign immunity, United States is not subject to garnishment proceedings); *Palmiter v. Action, Inc.,* 733 F.2d 1244, 1248 (7th Cir.1984) (holding that a judgment creditor could not garnish federal funds granted to an Indiana Head Start program).

■ The parties do not dispute these well-established principles. What is disputed, however, is whether property costing less than $1,000 constitutes federal property, making it immune from execution. Neukirchen argues that property costing less than $1,000 is not federal property and she cites 45 C.F.R. § 74.139 in support of her position. This section provides:

> When original or replacement equipment is *no longer to be used* in projects or programs currently or previously sponsored by the Federal Government, disposition of the equipment shall be made as follows: (a) Equipment with a unit acquisition cost of *less than $1000* and equipment with *no further use value.* The equipment may be retained, sold, or otherwise disposed of, with no further obligation to the Federal Government.

45 C.F.R. 74.139 (emphasis added).

Section 74.139 allows a local Head Start organization to dispose of equipment with a unit acquisition cost of less than $1000, once it is no longer needed. Because there is no further obligation to the federal government, Neukirchen contends that the federal government has no interest whatsoever in the property. However, in *Joliet–Will* this court clearly held that property purchased with federal funds constitutes federal property. *Joliet–Will,* 847 F.2d at 432 (property purchased with federal funds are assets of the federal government). And while the parties in *Joliet–Will* did not attempt to identify property based on its purchase price, the rationale we applied in that case applies equally to property costing less than $1000. *Id.* at 432. Specifically, in *Joliet–Will* this court examined the federal statute which funded the Joliet–Will County Community Action Agency and the governing federal regulations, and determined that the grants imposed "minute controls" over the funds and left little discretion for their use. *Id.*[3] Second, we determined that the local program's relationship with the federal government was more properly characterized as that of an agent designated to perform specific tasks rather than a borrower or an entrepreneur using invested funds. *Id.* Third, we noted that the federal statute did not authorize the federal government "to allow appropriated funds to be used to pay creditors of a private organization unless the creditor incurred an expense specifically authorized by the grants and relevant regulations." *Id.* Fourth, we focused on precedent holding that federal funds held by a grantee remained the property of the federal government unless and until the funds are expended according to the terms of the grant. *Id.* at 432–33. This court also noted, as least important in its reasoning, that existing federal criminal law treated thefts of federal grant money or personal property purchased with federal grant money as violations of federal law. *Id.* at 433. Based on these factors, we held that property purchased with federal funds constituted federal property. And all of these factors apply equally to property costing less than $1000.

■ It is true that one of the "minute controls" discussed in *Joliet–Will* was that if the federal government so requests the grantee must reconvey to the government every piece of property costing $1,000 or

---

**3.** Joliet–Will was a Community Action Agency rather than a Head Start program. Head Start organizations, however, are also subject to minute controls and are left with little discretion over the use of grant funds. 45 C.F.R. Part 74.

more. *Id.* at 432. This particular "minute control" does not extend to such property costing less than $1,000. Yet the applicable regulations place other controls on the use and disposition of Head Start property costing less than $1,000. For example, section 74.137 provides that "[e]quipment ... shall be used by the recipient in the project or program for which it was acquired as long as needed.... When no longer needed for the original project or program, the recipient shall use the equipment, if needed, in other projects or programs currently or previously sponsored by the Federal Government...." 45 C.F.R. § 74.137. Even section 74.139, which Neukirchen relies upon, contains "minute controls" over the disposal of property costing less than $1,000. That provision states that a Head Start organization may dispose of such property only when it is "no longer to be used in projects or programs currently or previously sponsored by the Federal Government." Moreover, the other "minute controls" mentioned in *Joliet–Will*— such as regulations over the budget, chargeable items, costs, and use of funds—apply equally to Head Start property costing less than $1,000. Given the overwhelming control that the Secretary exercises over property purchased with federal funds and the corresponding lack of discretion on Wood County's part, we do not believe that the absence of specific regulations requiring Wood County to reconvey to the United States property costing less than $1,000 commands a different result. We, therefore, conclude that *Joliet–Will*'s rationale requires that property purchased with federal grant funds, including property costing less than $1000, constitutes

federal property.[4] As such, it is not subject to execution by Neukirchen.

■ One other aspect of Neukirchen's appeal merits discussion. Neukirchen argues that her judgment may be paid with federal Head Start grant funds and property purchased with federal grant funds because her age discrimination judgment is an authorized "labor relations cost." In support of her position she cites an Office of Management and Budget Circular which provides:

[C]osts incurred in maintaining satisfactory relations between the organization and its employees, including costs of labor management committees, employee publications, and other related activities are allowable.

Office of Management and Budget, Circular A–122, "Cost Principles for Nonprofit Organizations," 45 Fed.Reg., 46022, 46030 (July 8, 1980).

Wood County contests Neukirchen's reading of this provision, claiming that since Wood County never hired her, albeit due to illegal discrimination, she was never an employee. Therefore the cost of the judgment was not "incurred in maintaining satisfactory relations between the organization and its employees...." The Secretary also cites another provision of the Office of Management and Budget Circular which states that:

Costs of fines and penalties resulting from violations of, or failure of the organization to comply with Federal ... laws and regulations are unallowable....

45 Fed.Reg. at 46029. Thus, the Secretary claims that an age discrimination judgment is an "unallowable cost" which cannot be paid with federal funds or federal property.[5]

---

4. Once Head Start property is "no longer needed," section 74.139 allows a Head Start organization to dispose of the property with no further obligation to the federal government. Thus, pursuant to § 74.139, property "no longer needed" no longer constitutes federal property, and it would be subject to attachment. In this case, however, Wood County asserts that all of its property is still needed, and Neukirchen does not contest this claim. Moreover, after the district court issued the writ of execution, the Secretary modified the relevant regulations. The $1000 distinction which was contained in § 74.139 has been deleted and replaced with even more stringent regulations governing the disposition of property purchased with federal funds. 45

C.F.R. §§ 74.32, 74.34, 74.35. The Secretary failed to alert the court to these recently issued regulations, and she did not argue that the new regulations should govern our disposition. Nonetheless, under these new regulations, a Head Start organization is no longer entitled to retain property costing less than $1,000.00. Therefore, under the new regulations, Neukirchen also cannot attach federal property once it is "no longer needed."

5. The Secretary's view of allowable and unallowable costs produces several ironies. For example, the Secretary considers premiums paid to insure against discrimination judgments "allow-

Even assuming that Neukirchen's age discrimination judgment is an "allowable cost," however, absent a waiver of sovereign immunity by Congress, *Buchanan* and its progeny still prohibit execution against these federal assets. *Buchanan*, 45 U.S. at 20–21; *Burr*, 309 U.S. at 244, 60 S.Ct. at 490; *Palmiter*, 733 F.2d at 1247. And Congress has not waived sovereign immunity in this case. *See Palmiter*, 733 F.2d at 1247 n. 4 (United States has not waived its sovereign immunity to allow for the garnishment of federal Head Start funds); *Henry v. First Nat. Bank of Clarksdale*, 595 F.2d 291, 309 (5th Cir.1979) (the United States has not consented to judicial garnishment of Head Start funds and, therefore, sovereign immunity protects these funds from garnishment). Therefore, Neukirchen cannot execute against Wood County's property purchased with federal funds.

This result seems paradoxical, indeed. In effect, Congress has created a segment of *private* employers who may discriminate without consequence, assuming the claim goes to judgment. (Even federal agencies are prohibited from discriminating on the basis of age.)[6] Had Wood County been a privately funded preschool, it would have had to compensate Neukirchen for violating the ADEA. If the private school was unwilling or unable to pay, it would be forced out of business. Congress has forcefully imposed what can be a harsh result on businesses that discriminate. One would suppose that where identical discrimination occurs at a federally funded private business, that business should suffer the same consequences. Yet, Wood County has escaped the cost of its illegal

discrimination because its federally funded assets cannot be attached and because the Secretary has apparently refused to terminate Wood County's funding as a consequence of the violation. *See* Letter from the HHS to Wood County, stating "[A]lso in response to a concern expressed by your staff, we provided assurances that the Department of Health and Human Services did not intend to withdraw funding from Wood County Head Start, Inc. based on the finding of the Court."; *see* 45 C.F.R. Part 91 (prohibiting age discrimination and authorizing revocation of federal grant funds to grant recipients which violate the ADEA). This may be a strange dichotomy, but any remedy is for Congress, not the courts.

## B. Execution of Property Purchased with State Funds

■ The writ of execution issued by the district court also allowed attachment of Wood County's assets purchased with non-federal funds. Wood County contends that this portion of the writ is invalid to the extent that it allows attachment of property purchased with state funds.[7] In support of its position, Wood County cites Wisconsin Statute Section 115.3615 which provides:

> **Head start supplement.** From the appropriation under s. 20.–255(2)(eh), the state superintendent shall distribute funds to agencies determined by the state superintendent to be eligible for designation as head start agencies under 42 USC 9836 to provide comprehensive health, educational, nutritional, social and other services to economically disadvantaged children and

---

able," but judgments that were not insured against are "unallowable." It also appears that the Secretary considers costs incurred by Head Start organizations to *settle* discrimination suits "allowable," while *judgments* are "unallowable." Finally, she considers attorney's fees to defend an age discrimination suit "allowable," including the attorney's fees Wood County is currently incurring to obstruct Neukirchen's efforts in collecting the judgment a jury awarded her, but not the judgment itself. In fact, in this case, HHS directed Wood County to use part of the $70,000 surplus—not to pay Neukirchen for discriminating against her—but to pay its own attorney's fees. Apparently the only cost associated with a discrimination claim that the Secretary will not allow is the cost of satisfying a jury verdict de-

claring that a Head Start organization has committed illegal discrimination.

6. *See Lehman v. Nakshian*, 453 U.S. 156, 157–58, 101 S.Ct. 2698, 2700, 69 L.Ed.2d 548 (1981) (summarizing that the 1974 amendment to the Age Discrimination in Employment Act of 1967 brought the federal government and federal agencies within the scope of the ADEA for the first time).

7. Wood County does not contest the validity of the writ of execution as it applies to property which was purchased with funds coming from sources other than the state and federal governments. We accordingly affirm the writ as it applies to such property.

their families. *The state superintendent shall distribute the funds in a manner consistent with 42 USC 9831 to 9852 except that there is no matching fund requirement.* The state superintendent shall give preference in funding under this section to an agency that is receiving federal funds under 42 USC 9831 to 9852. Funds distributed under this section may be used to match available federal funds under 42 U.S.C. 9831 to 9852 only if the funds are used to secure additional federal funds for the purposes under this section. (Emphasis added).

Wood County argues that this section of Wisconsin's statute incorporates the federal regulations governing the use and disposition of property, including those provisions that provide that Head Start property may only be used for specific purposes, of which payment of a discrimination judgment is not one.

Section 115.3615, however, says nothing of incorporating the federal statute. It merely states that "[t]he state superintendent shall distribute the funds in a manner *consistent* with 42 USC 9831 to 9852." (Emphasis added.) Section 115.3615 also says nothing regarding a recipient's use of funds. It speaks merely of the state superintendent's distribution of the funds. Moreover, the federal regulations specifically provide that the regulations governing the use and disposal of Head Start property apply only to property purchased in whole or in part with federal funds; they say nothing about how a state can use its own funds. Specifically, Section 74.130(a), which sets forth the scope and applicability of the regulations concerning Head Start property, provides:

(a) Except as explained in paragraphs (c), (d), and (e) of this section this subpart applies to real property, equipment, and supplies acquired with grant support. To be considered acquired with *grant support, some or all* of the property's acquisition cost must be a direct cost under the grant, a subgrant, or a cost-type contract and must be either borne by grant funds or counted toward satisfying a grant cost-

sharing or matching requirement. (Emphasis added.)

The regulations further define grant, stating:

Grant means an award of financial assistance in the form of money, or property in lieu of money, by the *Federal Government* to an eligible recipient.

45 C.F.R. § 74.3. (Emphasis added.) We, therefore, conclude that section 115.3615 does not incorporate the federal regulations.[8]

■ Whether Wisconsin law prohibits execution, however, is another question. Presumably Wisconsin has some regulation governing a recipient's use of state Head Start funds, but this is purely a state law question, not one governed by the federal Head Start program or the federal government's sovereign immunity. Wood County and the Secretary fail to argue any independent state law ground for reversing the writ of execution. The State of Wisconsin, nonetheless, may have some other regulation governing a recipient's use of state Head Start funds which would prohibit execution against Wood County's property purchased with state funds. Or Wisconsin may, like the federal government, have an interest in property purchased with state funds. These are purely questions of Wisconsin law. *Burr*, 309 U.S. at 244, 60 S.Ct. at 490 (whether execution under a judgment may be had is a state question). Also these are questions not answered by the parties on appeal, or the court below. Normally, the failure of an appellant to present an argument on appeal will result in waiver. In this case, however, it would be inappropriate to allow a private organization and the federal government to waive a potential property interest of the State of Wisconsin, especially where, as here, it is unclear whether Wisconsin was notified of the pending writ of execution. *See* Motion to Quash Writ of Execution, wherein United States stated it did not have notice of writ of execution. Accordingly, we remand for further consideration of whether Wisconsin law prohibits execution against Wood County property purchased with state Head Start funds, at which time Wisconsin may seek to intervene so as

---

**8.** The modified regulations also provide that the regulations governing management and disposition of property apply only to property furnished by HHS or whose cost was directly charged to a project supported by an HHS award. 45 C.F.R. § 74.30.

to protect any interests it may have in that property. *See Palmiter,* 733 F.2d at 1246 (State of Indiana intervened as a matter of right pursuant to Fed.R.Civ.P. 24(a) in action wherein plaintiff sought to garnish Head Start funds).

### III. Conclusion

Neukirchen proved that Wood County illegally discriminated against her based on her age, and she obtained a judgment in excess of $86,000. She has been unable to collect on this judgment, however, because a majority of Wood County's money and property is provided by Congress without an accompanying waiver of sovereign immunity. Absent a waiver of sovereign immunity, Neukirchen cannot attach Wood County's property purchased with federal funds, including property costing $1000 or less. As for the property purchased with non-federal funds, we remand so that the district court can determine whether independent state law grounds prohibit attachment of Wood County's property purchased with state Head Start funds. We affirm the writ to the extent that it allows attachment of property purchased with funds coming from sources other than the state and federal governments.

For these and the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.