**In the Matter of UNIVERSAL SE-CURITY AND PROTECTION SERVICE, INC., Debtor**

**UNIVERSAL SECURITY AND PROTECTION SERVICE, INC., Plaintiff,**

**v.**

**DESIRE COMMUNITY HOUSING CORP., Defendant.**

Bankruptcy No. 97–14538.

Adversary No. 97–1171.

United States Bankruptcy Court, E.D. Louisiana.

July 6, 1998.

Emile J. Dreuil, Jr., New Orleans, LA, for plaintiff.

### REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter comes before the court on the motion of defendant, Desire Community Housing Corporation ("Desire Housing"), for stay of garnishment and sanctions.[1]

#### I. *Factual Background*

The HOME Investment Partnerships Program is a federally funded project that assists low income people in acquiring and renovating properties. The funds for the program come from the Department of Housing and Urban Development ("HUD").

The City of New Orleans is a recipient of the HOME program.

Desire Housing, a nonprofit corporation, is a community housing development organization ("CHDO"), and a sub-recipient of HOME funds through the City of New Orleans.

Universal Security and Protection Service, Inc. ("Universal") provided security guard services for Desire Housing. On August 15, 1997, Universal filed for Chapter 11 relief.

On November 18, 1997, Universal filed the pending adversary proceeding against Desire Housing seeking to be paid under the Louisiana open account statute, La.R.S. 9:2781.

Although Desire Housing filed an answer to the complaint, it did not appear at the trial. Accordingly, the court entered judgment in favor of Universal and against Desire Housing on April 8, 1998 in the amount of $99,057, with legal interest from November 18, 1997, plus attorney fees of $10,000, and costs.[2]

Universal then garnished Desire Housing's bank accounts, and seized the following funds:

*Liberty Bank and Trust Company*

five checking accounts with a total balance of $99,057.00.[3]

*Hibernia National Bank*

1. $694.39 in account number 812374028.
2. $46.62 in account number 221004825, titled Rehab Life Fund Repayment.
3. $3,617.21 in account number 22201561, titled Gordon Plaza Apts.
4. $220.23 in account number 812270699, titled Insurance.
5. $10,802.25 in account number 3001049513, titled Gordon Plaza Apts. Security Deposit Acct.
6. $4,117.89 in account number 3001049513, titled Plaza Commercial Bldg. Security Deposit Acct.
7. $2,728.76 in account number 456763.[4]

Rodney Lemon, the chief financial officer of New Orleans Mortgage Authority, who is in charge of administration of the HOME funds, testified that the purpose of the funds was to allow Desire Housing to acquire and renovate dilapidated properties. Both Wilbert Thomas, Sr., executive director, president, and chief executive officer of Desire Housing, and Talmadge E. Mitchell, director of accounting, testified that the funds seized from Liberty Bank are HOME funds that

---

1.  Pl. 26.

2.  Pl. 8.

3.  Pl. 30.

4.  Ex. Desire 1.

must be used for construction or renovation of eligible projects..

Mr. Mitchell stated that Item Nos. 5 and 6 of the funds seized from the Hibernia Bank are security deposits for tenants. He also stated that through an agreement with HUD, Item No. 3 is restricted to operating costs of Garden Plaza only. Thus, he concluded that Item Nos. 3, 5, and 6 of the Hibernia Bank are restricted accounts. He testified further that payment for security protection such as that provided by Universal is covered under a different contract, with additional funds provided by the City of New Orleans.

## II. *Analysis*

Desire Housing seeks a return of the funds that were garnished by Universal, and requests sanctions against Universal for garnishing its accounts in violation of the law governing the HOME program. It contends that its accounts are not subject to garnishment for three reasons: (1) the funds in the Liberty Bank accounts are HOME funds; (2) Item No. 3 at the Hibernia Bank is a restricted account through an agreement with HUD; and (3) two accounts (items 5 and 6) at the Hibernia Bank are security deposits of tenants that reside in the complex and are not Desire Housing's money available for garnishment.

Universal submits that Desire Housing has failed to cite any authority in support of the contention that the funds are not subject to garnishment, and that it would be inequitable to prohibit a legitimate judgment creditor from collecting the amount due on the judgment.

### A. *HOME program funds*

The court will first consider Desire Housing's argument as it relates to the HOME funds.

Desire Housing submits it is a community housing development organization ("CHDO") pursuant to the HOME Investment Partnership Act, as set forth in 24 C.F.R. § 92.2, which states in part:

Community housing development organization means a non-profit organization that:

5. 24 C.F.R. § 92.2.

(1) Is organized under State or local laws;

(2) Has no part of its net earnings inuring to the benefit of any member, founder, contributor, or individual;

(3) Is neither controlled by, nor under the direction of, individuals or entities seeking to derive profit or gain from the organization....;

(4) Has a tax exemption ruling from the Internal Revenue Service under section 501(c)(3) or (4) of the Internal Revenue Code of 1986, 26 C.F.R. § 1.501(c)(3–1).[5]

Desire Housing contends that the funds seized from Liberty Bank were project specific funds not associated with the indebtedness owned by Universal. It cites 24 C.F.R. § 92.301(a), dealing with allowable costs for project-specific assistance to CHDO, as follows:

(a) Project-specific technical assistance and site control loans.

(1) General. Within the percentage specified in § 92.300(c). HOME funds may be used by a participating jurisdiction [New Orleans] to provide technical assistance and site control loans to community housing development organizations in the early stages of site development for an eligible project.... *All costs must be related to a specific eligible project or projects.*

(2) Allowable costs. A loan may be provided to cover project costs necessary to determine project feasibility (including costs of an initial feasibility study), consulting fees, costs of preliminary financial applications, legal fees, architectural fees, engineering fees, engagement of a development team, option to acquire property, site control and title clearance. *General operational expenses of the community housing development organization are not allowable costs.*[6]

Desire Housing asserts that based upon these provisions, the HOME funds may not be used to pay operating expenses incurred by a CHDO, and are not subject to garnishment.

6. 24 C.F.R. § 92.301(a) (emphasis added).

Although the court specifically requested Desire Housing to cite case law in support of its position, and gave Desire Housing additional time to locate authorities and file a memorandum, it cited only these federal regulations, and the case of *U.S. v. Kimbell Foods, Inc.*[7] The *Kimbell Foods* case is not on point, and has nothing to do with garnishment proceedings. It holds that when the United States through its agencies lends funds by the authority of federal legislation, the rights of the United States as a lender are derived from and warrant the protection of federal law.[8]

Although Desire Housing failed to find any cases, the court was able to locate several cases that discuss the issue directly.

The leading case of *Palmiter v. Action, Inc.,*[9] involved post-judgment garnishment proceedings against an Indiana nonprofit community service organization that was substantially funded by direct and indirect federal grants. The judgment had been obtained in a personal injury suit after a car driven by an Action, Inc. employee had caused injuries. The Seventh Circuit determined that even where the organization disbursing federal grant funds is not a governmental agency, the funds are immune to the extent they have not yet been spent for their federally authorized purpose. The court stated:

> It is well settled that federal monies are not subject to garnishment proceedings until they have been paid out for the purposes for which they were appropriated. In *Buchanan v. Alexander*, 45 U.S. (4 How.) 20, 11 L.Ed. 857 (1846) the Supreme Court explained its rationale and stated the rule: The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by State process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United

States as if it had not been drawn from the treasury. Until paid over by the agency of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. 45 U.S. at 20–21. While it is true that Action is not a federal agency, any contention that this in itself makes the funds in Action's accounts garnishable is meritless.

> As the district court noted, Action is "only one link in the bureaucratic chain necessary to move funds from the United States Treasury to local communities" pursuant to the intricate grant system developed by Congress. [*Palmiter v. Action, Inc.*] 548 F.Supp. [1166] at 1168 [(N.D.Ind. 1982)]. Even though Action is not a federal agency, its management of the federal funds it received nevertheless was governed by pervasive federal legislation and regulations which specified the purposes for which the funds could be used.[10]

The *Palmiter* court relied upon the Fifth Circuit case of *Henry v. First National Bank of Clarksdale.*[11] In *Henry*, the United States sought to enjoin a state court's attachment of federal grant monies received by a local nonprofit community service organization through the Department of Health, Education & Welfare under the Headstart Follow–Through Act and predecessor statutes. The Fifth Circuit held that the United States retained a reversionary interest in all grant funds and in all property purchased with such funds that could no longer be used for the narrow purposes specified in the act and regulations. The court stated:

> It is undisputed that virtually all of MAP's assets derive from grants made through the Department of Health, Education and Welfare under the Headstart– Follow Through Act, 42 U.S.C. § 2928, et seq. (1976), and predecessor statutes authorizing funding for qualified Headstart Programs. The Act carefully delineates the purposes for which grant funds may be

---

**7.** 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979).

**8.** *Id.*

**9.** 733 F.2d 1244 (7th Cir.1984)

**10.** *Palmiter v. Action, Inc.*, 733 F.2d at 1247–48.

**11.** 595 F.2d 291 (5th Cir.1979), *cert. denied sub. nom., Claiborne Hardware Company v. Henry,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

expended. Although MAP is a private, nonprofit corporation and not a federal agency, extensive and detailed regulations govern its expenditure of federal funds in order to ensure the use of grant funds for approved purposes. See 45 C.F.R. Part 74 (1977). The United States retains a reversionary interest in all grant funds and in all property purchased with such funds that can no longer be used for the narrow purposes specified in the Act and regulations.[12]

The *Palmiter* decision was followed by the Seventh Circuit in the case of *Neukirchen v. Wood County Head Start, Inc.,*[13] which held that property purchased with federal grant funds constitutes federal property, and is not subject to execution by a judgment creditor. Similarly, the case of *Short v. U.S.,*[14] determined that funds held in the United States Court of Federal Claims retained their character as federal funds and were immune from state attachment proceedings. The principle that federal grant funds must be paid out for grant purposes or revert to the United States was applied to grant funds under the National School Lunch Program in the case of *Sobol v. Haitian Academy.*[15]

The issue has come up in the bankruptcy context, where debtors holding federal grant funds or property purchased with federal grants have filed for bankruptcy protection. The leading Seventh Circuit case of *In re Joliet–Will County Community Action Agency,* 847 F.2d 430 (7th Cir.1988), held that unexpended federal and state cash grants, as well as the personal property purchased with such grants, were not assets of the estate of a private, non-profit community organization. Other decisions arising in the bankruptcy area are consistent with the precepts of *Palmiter* and *Joliet–Will,* and hold similarly.[16]

■ The legal principle to be derived from *Palmiter* and the other cases is that when federal grant funds are awarded in accordance with extensive and detailed regulations governing their expenditure, the grant funds are not subject to garnishment if they have not yet been spent for their federally authorized purpose. According to *Palmiter,* the judgment creditor bears the burden of proving either that the funds it seeks to attach are not federal in nature or that the funds have been finally expended for their statutorily defined purpose.[17]

■ Universal is unable to maintain its burden of proving either of these items. Mr. Thomas and Mr. Mitchell testified that the funds seized from Liberty Bank are HOME funds. Therefore, the funds are federal in nature, and they have not yet been spent for their statutorily defined purpose. Further, although the court was unable to locate any cases involving the HOME program, the HOME program clearly contains extensive and detailed regulations governing the expenditure of federal funds under the program. The court is persuaded that the HOME program grants are protected from garnishment under the *Palmiter* and *Henry* line of cases.

The court has also found the Louisiana Third Circuit case of *Southard v. Belnue, Inc.,*[18] which merits discussion, although the court finds it to be distinguishable. In *Southard,* the Louisiana Third Circuit al-

---

**12.** 595 F.2d at 308–09.

**13.** 53 F.3d 809 (7th Cir.1995).

**14.** 37 Fed.Cl. 132 (Fed.Cl.1996).

**15.** 1990 WL 37901 (N.D.N.Y.1990).

**16.** *See e.g. In re Southwest Citizens' Organization for Poverty Elimination,* 91 B.R. 278 (Bankr. D.N.J.1988) (The rights of the Department of Health and Human Services in motor vehicles and equipment purchased with federal Head Start grant funds are paramount to those of the Chapter 7 trustee); *In re Madison County Eco-* *nomic Opportunity Commission,* 53 B.R. 541 (Bankr.S.D.Ill.1985) (The Illinois Department of Transportation retained an equitable lien on grant funds partially used by the debtor to purchase two vans under a joint grant with the United States Department of Transportation); *In re Community Associates, Inc.,* 173 B.R. 824 (D.Conn.1994) (Three vans purchased with federal grant funds were not property of the debtor's estate).

**17.** *Palmiter,* 733 F.2d at 1248. *See also Alliston v. Little Neighborhood Schools, Inc.,* 6 F.Supp.2d 396 (E.D.Pa.1998).

**18.** 618 So.2d 27 (La.App. 3rd Cir.1993).

lowed judgment creditors to garnish funds administered by the Broussard Housing Authority (BHA) on the grounds that the funds were "twice removed" from U.S. Treasury control. having been turned over to HUD, an agency which can sue and be sued, and transferred from HUD's bank account to BHA's bank account.

The *Southard* holding is not applicable in the pending case because it did not involve federal grant moneys that were to be spent on a statutorily designed purpose, such as the HOME program.[19]

Accordingly, Desire Housing is entitled to have the garnishment of the accounts at the Liberty Bank lifted.

### B. *Security deposits*

Desire Housing claims that Item Nos. 5 and 6 in the Hibernia Bank account are security deposits for the tenants in the Gordon Plaza Apartments and the Plaza Commercial Building.

Universal admits that if these accounts are true tenant deposits, then they may not be subject to garnishment. It contends, however, that the funds could well be Desire Housing's own money set aside to provide rental assistance to tenants of other properties.

The court disagrees with Universal's position. Louisiana Revised Statutes 9:3251 provides for security deposits for tenants, and states in part that "any advance or deposit of money furnished by a tenant or lessee to a landlord or lessor ... shall be returned to the tenant or lessee ... within one month after the lease shall terminate, except that the landlord or lessor may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises".[20] Section 3252 and 3253 provide for damages and attorney's fees for the willful failure of a landlord to comply with Section 3251.[21] These statutes make

clear that a tenant's security deposit is not property of the landlord.

When a judgment creditor seizes property of a third person in garnishment proceedings, the third person is entitled to have the property restored to him.[22]

The court is satisfied that Item Nos. 5 and 6 in the Hibernia Bank are security deposits of the tenants who occupy the apartment complexes listed. The accounts are so designated, and Mr. Mitchell so testified. Item No. 3 is also a restricted account not subject to garnishment.

Accordingly, Desire Housing is entitled to have the garnishment lifted as to those accounts at the Hibernia Bank designated as Item Nos. 3, 5, and 6.

### C. *Request for sanctions*

Desire Housing's request for sanctions against Universal is denied. Although counsel for Desire Housing wrote counsel for Universal a letter advising that Universal had seized federal HOME funds, the letter was written after the funds were seized and did not cite any case or statutory authority in support of the position. Under these circumstances, sanctions against Universal will not be granted.

An order will be entered in accordance with these reasons.

### ORDER

For the reasons assigned in the foregoing reasons for order issued this date,

**IT IS ORDERED:**

(1) The motion of defendant, Desire Community Housing Corporation for stay of garnishment and sanctions is **GRANTED IN PART** and **DENIED IN PART.**

(2) The motion is **GRANTED** in the following respects:

---

19. *See Alliston v. Little Neighborhood Schools, Inc.,* 6 F.Supp.2d at 396–98.

20. La.R.S. 9:3251.

21. La.R.S. 9:3252 and 3253.

22. *Stevenson v. Exchange National Bank,* 10 La. App. 179, 120 So. 96 (La.App. 2nd Cir.1929). *See also* La.R.S. 13:3869 (providing that a third party whose property has been seized may demand that the seizing creditor post an indemnity bond for the property seized).

(a) The garnishment by plaintiff, Universal Security and Protection Service, Inc., against the accounts of Desire Community Housing Corporation at the Liberty Bank and Trust Company is **RELEASED**.

(b) The garnishment by plaintiff, Universal Security and Protection Service, Inc., against the following accounts of Desire Community Housing Corporation at the Hibernia National Bank is **RELEASED**:

—$3,617.21 in account number 22201561, titled Gordon Plaza Apts.

—$10,802.25 in account number 3001049513, titled Gordon Plaza Apts. Security Deposit Acct.

—$4,117.89 in account number 3001049513, titled Plaza Commercial Bldg. Security Deposit Acct.

(3) The motion is **DENIED** in all other respects, and the stay of garnishment is **LIFTED** for the following bank accounts at the Hibernia National Bank:

—$694.39 in account number 812374028.

—$46.62 in account number 221004825, titled Rehab Life Fund Repayment.

—$220.23 in account number 812270699, titled Insurance.

—$2,728.76 in account number 456763.