**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1480

CARPENTERS PENSION FUND OF BALTIMORE, MARYLAND, by its
Trustee, Augustus L. Lester; MID-ATLANTIC REGIONAL COUNCIL
OF CARPENTERS HEALTH AND WELFARE FUND, by its Trustee,
Augustus L. Lester; MID-ATLANTIC REGIONAL COUNCIL OF
CARPENTERS SEVERANCE AND ANNUITY FUND, by its Trustee,
Augustus L. Lester; MID-ATLANTIC REGIONAL COUNCIL OF
CARPENTERS, BALTIMORE DISTRICT; CARPENTERS VACATION FUND OF
BALTIMORE, MARYLAND, by its Trustee, Augustus L. Lester;
BALTIMORE CARPENTERS' JOINT APPRENTICESHIP AND TRAINING
COMMITTEE, by its Trustee, Augustus L. Lester,

    Plaintiffs – Appellees,

  v.

MARYLAND DEPARTMENT OF HEALTH AND MENTAL HYGIENE,

    Garnishee – Appellant,

  and

TAO CONSTRUCTION COMPANY, INC.,

    Defendant,

WACHOVIA BANK,

    Garnishee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Benson Everett Legg, Senior District
Judge.  (1:07-cv-01414-BEL)

Argued:  March 22, 2013    Decided:  June 26, 2013

Before DUNCAN and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Reversed and remanded by published opinion. Judge Diaz wrote the opinion, in which Judge Duncan and Senior Judge Hamilton joined.

_____

**ARGUED:** William F. Brockman, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellant. Brian G. Esders, ABATO, RUBENSTEIN & ABATO, PA, Baltimore, Maryland, for Appellees. **ON BRIEF:** Douglas F. Gansler, Attorney General of Maryland, Baltimore, Maryland, for Appellant. Kimberly L. Bradley, ABATO, RUBENSTEIN & ABATO, PA, Baltimore, Maryland, for Appellees.

_____

DIAZ, Circuit Judge:

We consider whether the jurisdictional shield of the Eleventh Amendment[1] insulates a state from a writ of garnishment under Federal Rule of Civil Procedure 69(a). Carpenters Pension Fund of Baltimore, Maryland, and co-plaintiffs (collectively "the Fund") filed this garnishment proceeding against the Maryland Department of Health and Mental Hygiene (the "Department") to collect monies owed to a debtor construction company. The Department moved to quash the writ of garnishment on grounds of sovereign immunity and Maryland public policy. The district court denied the motion, and the Department filed this interlocutory appeal.

We conclude that a federal proceeding that seeks to attach the property of a state to satisfy a debt, whether styled as a garnishment action or an analogous common law writ, violates the Eleventh Amendment. As the Department is immune from suit, we reverse and remand with instructions to quash the writ of garnishment.

---

[1] While this appeal nominally arises under the Eleventh Amendment, we note "that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment," Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 754 (2002), deriving from the common law immunity that the states possessed before ratification and which the Constitution should merely be seen "as evidencing and exemplifying," Alden v. Maine, 527 U.S. 706, 728 (1999).

The instant litigation originates from an Employee Retirement Income Security Act action filed by the Fund in May 2007, against Tao Construction Company, Inc. ("Tao") alleging deficient employer contributions. When Tao failed to answer the summons, the district court entered a $16,140.64 default judgment for the Fund.

In an effort to collect the judgment, the Fund filed an enforcement action in the federal district court for the District of Maryland. After failed attempts to locate any assets owned by Tao, the Fund discovered that Tao's CEO had contracted with the Department to perform construction work under the trade name "Pharoah Building and Construction." Finding sufficient evidence that Pharoah was indeed the alter ego of Tao, the district court issued a writ of garnishment against the Department for amounts due ($9,963.52) to "Tao d/b/a Pharoah Building and Construction." J.A. 41.

The Department moved to quash the writ on grounds of sovereign immunity and Maryland public policy. In a preliminary memorandum opinion and order, the district court concluded that sovereign immunity did not apply because by providing for immunity from suit only under a public policy doctrine, Maryland had implicitly waived its sovereign immunity under the Eleventh Amendment. The court further concluded that Maryland public

policy did not foreclose the garnishment action because it sought "wages" rather than property. Nevertheless, the court deferred a final ruling on the Department's motion in anticipation of a joint status report regarding disputes about the payment obligations of the underlying contract.

The court subsequently held a hearing, during which the Department renewed its Eleventh Amendment objection. The court reaffirmed its conclusion that sovereign immunity did not bar the writ, but on different grounds. It concluded that the garnishment action was not a "suit" against a state entity, noting that although the garnishment action resembled a suit in the procedural sense, in substance it was not because the Department was not a real party in interest--but rather a "mere custodian" of the contract sums. J.A. 99. Accordingly, the court denied the Department's motion to quash.

We have jurisdiction[2] under the collateral order doctrine to review this interlocutory order inasmuch as it involves the

---

[2] We deferred action on the Fund's motion to dismiss for lack of subject matter jurisdiction pending arguments. We now deny that motion.

We do, however, agree with the Fund that we lack appellate jurisdiction to consider whether Maryland "public policy" supplies an independent basis for quashing the writ. The district court's analysis on that issue in its preliminary memorandum was advisory, as the court postponed its ruling on the Department's motion until its final order. The final order (Continued)

denial of an immunity from suit.  See P.R. Aqueduct & Sewer

Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-46 (1993).


II.

A.

We review the denial of sovereign immunity de novo.  S.C.

Wildlife Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008).

"[T]he States' immunity from suit is a fundamental aspect

of the sovereignty which the States enjoyed before the

ratification of the Constitution."  Alden, 527 U.S. at 713.

Because that protection inheres with the constitutional notion

of sovereignty that the states retained, Seminole Tribe of Fla.

v. Florida, 517 U.S. 44, 54 (1996), it "extends beyond the

literal text of the Eleventh Amendment," Fed. Mar. Comm'n, 535

U.S. at 754, to any "suit" that "subject[s] a State to the

coercive process of judicial tribunals," Seminole Tribe, 517

U.S. at 58.  Thus, we consider here whether "the federal

judicial action must fairly be deemed a 'suit'" against the

state.  In re NVR, LP, 189 F.3d 442, 450 (4th Cir. 1999).

In a case testing the Supreme Court's jurisdiction to

review state court criminal judgments in which the state is a

_____

in this case addressed only the Eleventh Amendment question,
which is the sole issue before us.

6

party, Chief Justice Marshall remarked: "What is a suit?  We understand it to be the prosecution, or pursuit, of some claim, demand, or request."  Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 407 (1821).  The Supreme Court has scarcely elaborated since, stating only that a "suit" is to be determined "'by the essential nature and effect of the proceeding.'" Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 277 (1997) (quoting In re State of New York, 256 U.S. 490, 500 (1921)).

For our part, we have outlined a more technical analysis based on "both the procedural posture and substantive nature of the proceeding."  In re NVR, 189 F.3d at 450.  And although our decision in In re NVR likely does not survive Central Virginia Community College v. Katz, 546 U.S. 356 (2006),[3] we believe its general test for determining a "suit"--which the Supreme Court did not disturb--is nonetheless instructive.  Accordingly, we examine whether the procedural means and substantive end of the instant writ of garnishment involve the compulsory exercise of

[3]  In Katz, the Supreme Court held that the Eleventh Amendment has limited application in the arena of federal bankruptcy jurisdiction, for the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, represented a partial cession by the states of their sovereign immunity.  See Katz, 546 U.S. at 373. Accordingly, it is doubtful that In re NVR, which applied the Eleventh Amendment to a bankruptcy reorganization that sought refunds of exempted taxes paid to Maryland and Pennsylvania, remains viable.

federal jurisdiction over the state of Maryland. See In re NVR, 189 F.3d at 450, 452-53.

The procedural inquiry compares the process of the legal action to that of a typical suit, see Fed. Mar. Comm'n, 535 U.S. at 756-59 (comparing putative "suit" to "civil litigation"), but principally as a measure of "the degree of coercion exercised by the federal court in compelling the state to attend," In re NVR, 189 F.3d at 452. For a suit qua "suit" involves "[t]he specific indignity against which sovereign immunity protects[:] the insult to a State of being haled into court without its consent." Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1640 (2011).

The substantive inquiry asks whether the proceeding "demand[s] something [from the state] by the institution of process in a Court of justice," Cohens, 19 U.S. (6 Wheat.) at 408, and "[t]he demand for money from a state is a strong indication that a federal judicial proceeding is indeed a 'suit'" as a substantive matter. In re NVR, 189 F.3d at 454; see also Coeur d'Alene Tribe, 521 U.S. at 277 ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest . . . ."). Where relief is premised on federal jurisdiction over the state, as opposed to where the state is merely an adjunct to a dispute that "collaterally affects" its

8

interests,[4] <u>id.</u>, the proceeding is a suit in the substantive sense.

B.

We now apply these principles to the instant proceeding, which is a federal enforcement action by the Fund under Federal Rule of Civil Procedure 69 to execute their legal judgment against Tao. The law of the forum state governs such ancillary proceedings. <u>See</u> Fed. R. Civ. P. 69. As a result, the district court in this case issued a writ of garnishment, which is a valid procedural device in Maryland for enforcing a judgment. <u>See</u> <u>Parkville Fed. Sav. Bank v. Md. Nat'l Bank</u>, 681 A.2d 521, 524 (Md. 1996) ("A writ of garnishment is a means of enforcing a judgment. It allows a judgment creditor to recover property owned by the debtor but held by a third party.").

We begin by noting that procedurally this action resembles a conventional "suit." The garnishment proceeding commences upon the issuance of a writ, <u>see</u> Md. R. 2-645(b)-(c), at which point the garnishee must file an answer admitting or denying indebtedness and asserting any applicable defenses "within the

---

[4] An example is a purely in rem proceeding in which "the state is not in possession of the property." <u>Tenn. Student Assistance Corp. v. Hood</u>, 541 U.S. 440, 446-50 (2004). In this context, "jurisdiction is premised on the res, not on the persona" of the states, <u>Hood</u>, 541 U.S. at 450, while the remedy does not involve recovery <u>from</u> the state treasury, <u>Cf.</u> <u>In re NVR</u>, 189 F.3d at 453-54.

time provided by Rule 2-321"--a period which coincides with answering a complaint in a civil action. See Md. R. 2-645(e). If the garnishee timely answers and the creditor timely replies, "the matter shall proceed as if it were an original action between the judgment creditor as plaintiff and the garnishee as defendant and shall be governed by the rules applicable to civil actions." Md. R. 2-645(g).

It is therefore not surprising that Maryland courts have designated garnishment actions as "separate cases, even though filed in the underlying action." Mayor & City Council of Baltimore v. Utica Mut. Ins. Co., 802 A.2d 1070, 1083 (Md. Ct. Spec. App. 2002). In fact, the Maryland Court of Appeals has "established that garnishment is, in essence, a suit by the debtor against the garnishee for the use and benefit of the attaching creditor, and that the rights of the creditor against the garnishee cannot rise above those of the debtor." Peninsula Ins. Co. v. Houser, 238 A.2d 95, 97 (Md. 1968) (emphasis added).

Perhaps most importantly, a garnishee who fails to file an answer to the writ risks default judgment. See Md. R. 2-645(f). As it is the compulsory aspect of one sovereign exerting its jurisdiction over another that concerns the Eleventh Amendment, see Alden, 527 U.S. at 749, a proceeding that encumbers the property of a sovereign unless it participates certainly amounts

to unconstitutional "coercion exercised by the federal court in compelling the state to attend," In re NVR, 189 F.3d at 452.

The Fund's service of the writ left the Department with two options: (1) answer the writ and appear before the court to assert its defenses, or (2) ignore the writ and have a default judgment imposed against the state treasury. When a similar ultimatum was present in Federal Maritime Commission, the Supreme Court stated: "To conclude that this choice does not coerce a State to participate in an . . . adjudication would be to blind ourselves to reality." 535 U.S. at 763-64.

The Fund's claim that the Department has admitted its indebtedness to Pharoah is immaterial. The Eleventh Amendment is a matter of jurisdiction, not liability. See In re NVR, 189 F.3d at 452 ("The Eleventh Amendment, of course, does not free Maryland from federal law, but simply the jurisdiction of federal courts."). It is the mere imposition of federal jurisdiction on a state, thereby offending its dignity as a sovereign, that violates this constitutional protection. See Fed. Mar. Comm'n, 535 U.S. at 769; Alden, 527 U.S. at 715. This injury results "regardless of the relief sought," Metcalf and Eddy, 506 U.S. at 146, and regardless of whether the relief is actually owed, see Automatic Sprinkler Corp. of Am. V. Darla Env't Specialists Inc., 53 F.3d 181, 182 (7th Cir. 1995) ("Automatic Sprinkler believes that sovereign immunity is

11

inapplicable because it is trying to collect money that the United States concededly owes to Darla.  This does not cut much ice.").

Accordingly, we conclude that this garnishment action is a "suit" in the procedural sense.  The state is the named garnishee, the adversarial posture of the action "demands affirmative action by Maryland," In re NVR, 189 F.3d at 453, and the action is indisputably premised on jurisdiction over the sovereign.

We also find that the underlying garnishment action satisfies the substantive criteria of a "suit" because it demands recovery from the state treasury.  See Gray v. Laws, 51 F.3d 426, 433 (4th Cir. 1995).  From the outset of the Republic a sovereign has enjoyed immunity from suits to attach its property, see The Schooner Exch. v. McFaddon, 11 U.S. (7 Cranch) 116 (1812) (attachment of foreign vessel), and this principle applies equally to efforts to attach the funds of the sovereign to satisfy the debt of another, see Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 375 (1945) ("In effect . . . this is an indirect effort to collect a debt allegedly owed by the government in a proceeding to which the government has not consented.").

As early as 1846, the Supreme Court rejected efforts by creditors to garnish the wages of navy seamen from the federal

12

treasury.  Buchanan v. Alexander, 45 U.S. 20 (1845).  The Court acknowledged that the disbursements were owed, yet applied sovereign immunity to prevent the disruption on government functions that would attend the garnishment of public funds held in the Treasury.  Id.

Later in Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 245 (1940), the Supreme Court affirmed that a sovereign is immune from garnishment, but confronted the separate question of whether Congress waived that immunity in the National Housing Act, 12 U.S.C. § 1702, by allowing the Federal Housing Administrator to "sue or be sued."  In determining "whether or not garnishment comes within the scope of that authorization," Burr, 309 U.S. at 244, the Court concluded:

> Clearly the words 'sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings. Garnishment and attachment commonly are part and parcel of the process, provided by statute, for the collection of debts.  In Michigan a writ of garnishment is a civil process at law, in the nature of an equitable attachment.  But however it may be denominated, whether legal or equitable, and whenever it may be available, whether prior to or after final judgment, garnishment is a well-known remedy available to suitors.

Id. at 245-46 (emphasis added).  The analysis in Burr mirrors our own.  If a waiver from "suit" includes post-judgment

13

garnishment, then certainly the scope of immunity from "suit" does as well.

Recent precedent has confirmed that "sovereign immunity bars creditors from attaching or garnishing funds in the Treasury." Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 264 (1999); see Franchise Tax Bd. of Cal. v. U.S. Postal Serv., 467 U.S. 512, 516-17 (1984) ("[U]nless waived, sovereign immunity prevents the creditor . . . from collecting a debt through a judicial order requiring the United States to garnishee the employee's salary.").[5] And we implicitly endorsed this rule when we noted that Congress needed to legislatively annul federal sovereign immunity from garnishment. See Diaz v. Diaz, 586 F.2d 1061, 1063 (4th Cir. 1977) ("Indeed, it appears that the purpose and effect of 42 U.S.C. § 659 is to waive the sovereign immunity of the United States for garnishment and like purposes in a limited class of State court actions . . . .").

Even though the relevant cases mostly concern the immunity of the federal government from post-judgment attachment, we see no reason why a state should not enjoy this immunity as well.

---

[5] Our sister circuits have also affirmed this principle. See Watters v. Wash. Metro. Area Transit Auth., 295 F.3d 36, 40 (D.C. Cir. 2002); Shaw v. United States, 213 F.3d 545, 548 (10th Cir. 2000); Neukirchin v. Wood Cnty. Head Start, Inc., 53 F.3d 809, 812 (7th Cir. 1995); Ramsdell v. G.H. Coffey Co., 632 F.2d 162, 163 (1st Cir. 1980); May Dep't Stores Co. v. Smith, 572 F.2d 1275, 1277 (8th Cir. 1978).

State and federal immunity from suit are coextensive inasmuch as both sovereigns derive their immunity from the same common law heritage. See Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1087-88 (9th Cir. 2013) ("Tribal sovereign immunity derives from the same common law immunity principles that shape state and federal sovereign immunity.").

Swimming against the current of this precedent, the Fund can only repeat the reasoning of the district court that the instant proceeding is not a suit because the Department is a "mere custodian" for sums it admittedly owes to Pharoah.[6] But this characterization is true of all monies held in the state treasury in the sense that they are all allocated for some governmental purpose or obligation.

At bottom, the Fund's effort to distinguish the specific money it requests from the rest of Maryland's treasury is an unsuccessful attempt to characterize its garnishment action as an in rem proceeding. But "[w]hile garnishment has been said to be a proceeding in rem, it is not, strictly speaking, in rem. It partakes both of the nature of a proceeding in personam and a

---

[6] The principle precedent the Fund relies on for this proposition is inapposite. In re Visiting Home Services did not involve a writ of garnishment issued against a state in federal court, but rather sought to enjoin a garnishment judgment that had already been executed against a state agency in state court. 643 F.2d 1356, 1361 (9th Cir. 1981).

proceeding in rem."  38 C.J.S. Garnishment § 2; see also Shaffer v. Heitner, 433 U.S. 186, 211 n.38 (1977) ("[G]arnishment or foreign attachment is a proceeding quasi in rem.").

In this case, the garnishment proceeding has an in personam character in that it requires jurisdiction over the sovereign and its treasury.  And it is clear that "an action--otherwise barred as an in personam action against the State--cannot be maintained through seizure of property owned by the State.  Otherwise, the Eleventh Amendment could easily be circumvented; an action for damages could be brought simply by first attaching property that belonged to the State and then proceeding in rem." Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 699 (1982) (plurality).

Regardless of how the Fund characterizes its claim in this case, it is ultimately seeking recovery from the Maryland treasury.  Accordingly, the Fund's post-judgment garnishment action is a suit in the substantive sense.


III.

As a matter of procedure and substance, the garnishment proceeding we consider here is a "suit" under the Eleventh Amendment.  As a result, the Department is entitled to sovereign

16

immunity.  We therefore reverse the district court's order and remand with instructions to quash the writ of garnishment.

<u>REVERSED AND REMANDED</u>

17